## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| JONATHAN LINDSEY, Senator; JAMES RUNESTAD, Senator; JAMES DESANA, Representative; RACHELLE SMIT, Representative; STEVE CARRA, Representative; JOSEPH FOX, Representative; MATT MADDOCK, Representative; ANGELA RIGAS, Representative; JOSH SCHRIVER, Representative; NEIL FRISKE, Representative; and BRAD PAQUETTE, Representative, | CIVIL ACTION<br><br>Case No. 1:23-cv-01025-JMB-PJG<br><br>Hon. Jane M. Beckering |
| Plaintiffs,<br>v. | **PROPOSED INTERVENOR-DEFENDANTS' MOTION TO INTERVENE** |
| GRETCHEN WHITMER, in her official capacity as Governor of Michigan; JOCELYN BENSON, in her official capacity as Michigan Secretary of State; and JONATHAN BRATER, in his official capacity as Director of Elections, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

Proposed Intervenor-Defendants Jim Pedersen, Andrea Hunter, the Michigan Alliance for Retired Americans (the "Alliance"), the Detroit Downriver Chapter of the A. Philip Randolph Institute ("DD APRI"), and Detroit Disability Power ("DDP") (together, "Proposed Intervenors") seek to intervene as defendants in the above-captioned lawsuit to safeguard their and their members' substantial and distinct legal interests, which will otherwise be inadequately represented. For the reasons discussed in the memorandum in support, filed concurrently herewith, Proposed Intervenors are entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, Proposed Intervenors request permissive intervention pursuant to Rule 24(b).

Proposed Intervenors respectfully request that the Court set a schedule regarding this motion to intervene that allows for their participation in any briefing schedules and hearings that are held. Otherwise, Proposed Intervenors' fundamental constitutional rights are at risk of being severely and irreparably harmed, as described more fully in the memorandum in support of this motion.

Pursuant to Local Rule 7.1(d) and § III(B) of this Court's Information and Guidelines for Civil Practice, counsel for Proposed Intervenors conferred with counsel for Plaintiffs and Defendants for their positions on this motion. An attempt to obtain concurrence was partially successful: Defendants, represented by the Attorney General, indicated they do not oppose intervention (but do not concur) in dialogue on October 10, 2023. Proposed Intervenors contacted Plaintiffs multiple times by phone and email on October 10, 2023, and, upon request, provided Plaintiffs' counsel with additional information to assist in Plaintiffs' evaluation of Proposed Intervenors' motion; but concurrence was not obtained.

WHEREFORE, Proposed Intervenors request that the Court grant them leave to intervene in the above-captioned matter and to file their proposed motion to dismiss (Ex. 1).[1]

---

[1] Proposed Intervenors also include a proposed answer (Ex. 2), out of an abundance of caution, pursuant to Federal Rule of Civil Procedure 24(c)'s requirement that a motion to intervene "be accompanied by a *pleading* that sets out the claim or defense for which intervention is sought." (emphasis added).

Dated: October 11, 2023.

Respectfully submitted,

/s/ *Sarah S. Prescott*
Sarah S. Prescott (P70510)
Salvatore Prescott Porter & Porter, LLC
105 East Main Street
Northville, Michigan 48167
248.679.8711
sprescott@spplawyers.com

Aria C. Branch*
Jyoti Jasrasaria
Samuel T. Ward-Packard*
Julie Zuckerbrod*
Attorneys for Plaintiffs
Elias Law Group
250 Massachusetts Ave, NW, Ste 400
Washington, DC 20001
202.968.4490
abranch@elias.law
jjasrasaria@elias.law
swardpackard@elias.law
jzuckerbrod@elias.law

*Counsel for Proposed Intervenor-Defendants*

*Admission pending

**CERTIFICATE OF SERVICE**

Sarah Prescott certifies that on the 11th day of October 2023, she served a copy of the above document in this matter on all counsel of record and parties via the ECF system.

/s/ *Sarah S. Prescott*
Sarah S. Prescott

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JONATHAN LINDSEY, Senator; JAMES
RUNESTAD, Senator; JAMES DESANA,
Representative; RACHELLE SMIT,
Representative; STEVE CARRA, Representative;
JOSEPH FOX, Representative; MATT
MADDOCK, Representative; ANGELA RIGAS,
Representative; JOSH SCHRIVER,
Representative; NEIL FRISKE, Representative;
and BRAD PAQUETTE, Representative,

                        Plaintiffs,

    v.

GRETCHEN WHITMER, in her official capacity
as Governor of Michigan; JOCELYN BENSON,
in her official capacity as Michigan Secretary of
State; and JONATHAN BRATER, in his official
capacity as Director of Elections,

                        Defendants.

CIVIL ACTION

Case No. 1:23-cv-01025-JMB-PJG

Hon. Jane M. Beckering

## PROPOSED INTERVENOR-DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

   I.   Michigan's Pro-Voting Ballot Initiatives........................................................... 2

   II.  Proposed Intervenors ....................................................................................... 3

ARGUMENT ...................................................................................................................... 6

   I.   Proposed Intervenors are entitled to intervene as of right. .................................. 6

      A.   The motion to intervene is timely. ................................................................ 7

      B.   Proposed Intervenors have significant protectable interests that may be
          impaired by this litigation. ........................................................................... 8

      C.   Proposed Intervenors' interests are not adequately represented by the
          current parties. ............................................................................................ 11

   II.  Alternatively, Proposed Intervenors should be granted permissive intervention. ............. 13

   CONCLUSION ................................................................................................................. 14

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, Jim Pedersen, Andrea Hunter, the Michigan Alliance for Retired Americans (the "Alliance"), the Detroit Downriver Chapter of the A. Philip Randolph Institute ("DD APRI"), and Detroit Disability Power ("DDP") (together, "Proposed Intervenors") move to intervene as defendants in this lawsuit. Through this action, Plaintiffs seek extraordinary and unprecedented relief: to invalidate two amendments to the Michigan Constitution and prevent the future use of ballot initiatives to amend the state constitution in any way that implicates the times, places, and manner of federal elections. Plaintiffs' requested relief would gut Michiganders' fundamental right to vote and eliminate their right to protect and expand voting rights, all based on a bogus legal theory that the Supreme Court rejected just this summer. *See Moore v. Harper*, 600 U.S. 1, 22 (2023).

Proposed Intervenors represent a diverse group of Michigan voters who depend on the constitutional rights and procedures that Plaintiffs attack in this lawsuit. Plaintiffs' requested relief threatens to erode Proposed Intervenors' right to vote, eliminate their ability to amend the Michigan Constitution to protect voting rights or enforce the right to vote in court, frustrate their organizational missions, and force them to divert their limited organizational resources. Indeed, the Alliance and DDP have a lawsuit pending that is based upon one of the very constitutional amendments that Plaintiffs now challenge. Each of these interests is sufficient to support intervention as of right. Alternatively, Proposed Intervenors should be granted permissive intervention.

Proposed Intervenors attach a proposed motion to dismiss and brief in support (Ex. 1) and a proposed answer (Ex. 2), per Rule 24(c).

1

## BACKGROUND

**I.    Michigan's Pro-Voting Ballot Initiatives**

Since 2018, Michigan has fortified its democracy by implementing electoral reforms that have increased voter participation in the state. A crucial element of Michigan's ability to increase access to voting has been the use of voter-initiated ballot measures to enshrine voting rights in the Michigan Constitution.

In 2018, Michiganders overwhelmingly voted to expand voting rights and make voting more accessible. In the general election that year, 67 percent of voters approved Proposal 3 to enumerate the following voting-related rights in the Michigan Constitution: a secret ballot, timely distribution of absentee ballots to military personnel or those living overseas, straight-ticket voting, automatic voter registration, registration by mail up to 15 days before an election, in-person registration extended to election day with proof of residence, no-reason absentee voting, and the right to have statewide election results audited. Mich. Const. art. II, § 4(1)(a)-(f), (h), (l). Now enshrined in Article II, § 4(1) of the state constitution, these self-executing rights contributed to record-high voter turnout in 2020.[2] Nearly 30,000 people took advantage of the option to register and vote on election day, and absentee voting surged to about 3.2 million ballots—representing nearly 60 percent of all votes cast.[3]

In 2022, Michiganders further strengthened their voting rights with another ballot initiative. This time, Proposal 2 amended the Michigan Constitution to recognize the fundamental right to

---

[2] *See General Election Voter Registration/Turnout Statistics*, MIBOE (Feb. 2022), https://www.michigan.gov/sos/-/media/Project/Websites/sos/Election-Results-and-Statistics/General-Voter-Reg-Turnout-Stats.pdf.

[3] *See* Lauren Gibbons, *One Big Winner in Michigan's 2020 election cycle: No-reason absentee voting*, MLive (Nov. 11, 2020), https://www.mlive.com/politics/2020/11/one-big-winner-in-michigans-2020-election-cycle-no-reason-absentee-voting.html.

vote without harassing conduct, require state-funded absentee ballot drop boxes and postage for absentee applications and ballots, and require nine days of early in-person voting. Mich. Const. art. II, § 4(1)(a), (i)-(j), (m). Once again, this was an overwhelmingly popular initiative. Sixty percent of Michigan voters approved this amendment, and these rights have likewise been incorporated into Article II, § 4(1).

Voter-initiated ballot proposals have been critical not only to the preservation and expansion of voting rights, but also to these rights' enforcement. As amended by 2022 Proposal 2, Article II, § 4(1)(a) provides a right to "bring an action for declaratory, injunctive, and/or monetary relief to enforce the rights created by" Proposals 2022-2 and 2018-3 (collectively, the "Voter-Approved Amendments"), allowing Michiganders to challenge actions, laws, and policies that interfere with or unreasonably burden the right to vote. Mich. Const. art. II, § 4(1)(a). And this right of action is already being exercised: In August, Proposed Intervenors the Alliance and DDP filed a state court lawsuit challenging a law that criminalizes paying for a voter's transportation to the polls unless the voter is physically unable to walk. *Babb v. Nessel*, No. 2023-202028-CZ (Mich. Cir. Ct. Oakland Cnty.).

Plaintiffs filed this lawsuit on the heels of the Alliance's and DDP's state court case in a blatant attempt to weaken the rights that Michigan voters have fortified in recent years. Plaintiffs' requested relief would invalidate the rights that the Voter-Approved Amendments enshrined in the Michigan Constitution, including the ability to enforce those rights in court, and prevent Michigan voters from using ballot initiatives to affect federal elections in the future.

## II. Proposed Intervenors

Jim Pedersen and Andrea Hunter are Michigan voters who rely on the rights initiated by the Voter-Approved Amendments to exercise their fundamental right to vote. Indeed, some of the Plaintiffs who brought this lawsuit—and seek to strip away these rights—are elected officials who

are supposed to represent these voters' interests. The Voter-Approved Amendments help ensure that voters can exercise their voting rights to express their disapproval with Plaintiffs without undue restrictions. Accordingly, with this lawsuit, Plaintiffs seek not only to eschew the will of Michigan voters at large, but also to further insulate themselves from having to answer to their own constituents.

For example, Mr. Pedersen—a constituent of Rep. Carra and Sen. Lindsey, both Plaintiffs in this lawsuit—relies on voting methods guaranteed by Article II, § 4, such as no-excuse absentee voting and early in-person voting, to exercise the franchise. As an activist, union organizer, and occasional election protection worker, Mr. Pedersen dedicates each election day to encouraging and helping voters in his community to cast their ballots. Before the Voter-Approved Amendments took effect, he could only obtain an absentee ballot if he expected to be out of town on election day. But under the Amendments, he has been able to vote by mail without providing a reason, which ensures he can timely cast his ballot. Most recently in 2020 and 2022, Mr. Pedersen was a candidate for city council and voted by mail so that he could campaign on election day. Mr. Pedersen also lives in a rural area where transportation is limited and not always available on election day. Early in-person voting gives Mr. Pedersen and his neighbors the option to vote when they can arrange transportation to the polls.

Andrea Hunter likewise relies on the right to no-excuse absentee voting. Ms. Hunter is a steelworker, often works 8-to-12-hour shifts, and does not fully control her work schedule, making her ability to vote in person on election day unpredictable. Before the Voter-Approved Amendments, she could not always obtain an absentee ballot. Therefore, if she was asked to work late on election day, she was sometimes forced to choose between being disenfranchised and losing wages. She even risked losing her job if she left to vote. Additionally, when Ms. Hunter does not

have to work on election day, she volunteers doing election protection work across the state and does not always have time to vote at her own polling location. Because of the Voter-Approved Amendments, Ms. Hunter can reliably vote an absentee ballot before election day so that she can avoid lost wages and, when she does not have to work, exercise her political rights to help others vote.

The Alliance, DD APRI, and DDP are nonprofit organizations dedicated to promoting the franchise and ensuring the full constitutional rights of their members. The Alliance's mission is to ensure social and economic justice and full civil rights that retirees have earned after a lifetime of work, with particular emphasis on safeguarding the right to vote. The Alliance has more than 200,000 members in Michigan, composed of retirees from 23 public and private sector unions, community organizations, and individual activists. Many Alliance members are elderly, disabled, and/or have mobility difficulties and thus rely on voting methods guaranteed by Article II, § 4— including no-excuse absentee voting, drop boxes, and early voting—that do not require standing in long lines or risking exposure to illnesses like COVID-19.

DD APRI is a local chapter of the national A. Philip Randolph Institute, which is the senior constituency group of the AFL-CIO. DD APRI's mission is to fight for human equality and economic justice, and to seek structural changes through the American democratic process. DD APRI has approximately 100 members in Southeast Michigan, including community activists and members of public and private sector unions. DD APRI members work to educate voters about their voting options, to encourage voters to cast their ballots, and to help members of the Detroit Downriver community vote, both in person and absentee. Because many DD APRI members face barriers to election day in-person voting, they rely on the rights enshrined in Article II, § 4 to vote in a safe and reliable manner.

DDP is a 501(c)(3) membership organization whose mission is to build the political power of the disabled community in the Detroit region. DDP has approximately 300 members—both people with disabilities and their allies—and regularly reaches another 2,000 to 3,000 supporters and constituents through its email list and events. Many DDP members have mobility difficulties or other conditions that make it difficult or impossible to get to a polling location on election day, stand in line, and/or access voting machines. DDP works to reduce these barriers by ensuring equal access to ballots for all. For example, DDP works to ensure that people with disabilities can vote early, vote by mail, access all polling locations and voting machines, and access ADA-compliant drop boxes. The rights enshrined in Article II, § 4 provide DDP's members meaningful access to voting that they would not otherwise have. The Alliance, DD APRI, and DDP seek intervention on their behalf and on behalf of their members.

## ARGUMENT

### I.      Proposed Intervenors are entitled to intervene as of right.

The requirements for intervention under Rule 24 "should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)). This is especially true in election law cases, "and for good reason—the right to vote 'is regarded as a fundamental political right, because [it is] preservative of all rights.'" *Serv. Emps. Int'l Union Loc. 1 v. Husted*, 515 F. App'x 539, 543 (6th Cir. 2013) (per curiam) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)).

"Under Federal Rule of Civil Procedure 24(a)(2), district courts must permit anyone to intervene who, (1) in a timely motion, shows that (2) they have a substantial legal interest in the case, (3) their absence from the case would impair that interest, and (4) their interest is inadequately represented by the parties." *Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*, 41 F.4th 767, 771 (6th Cir. 2022) (citation omitted).

**A.      The motion to intervene is timely.**

This motion is timely. Courts consider the following factors when deciding whether a motion to intervene is timely:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Stupak-Thrall*, 226 F.3d at 472–73 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). "No one factor is dispositive, but rather the determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (quotation omitted).

Proposed Intervenors' motion is timely. Defendants have not yet submitted their answer, and no case schedule has been set. Indeed, Proposed Intervenors' motion comes less than two weeks after Plaintiffs filed their complaint, and before any other action in the case. *See Priorities USA v. Benson*, 448 F. Supp. 3d 755, 763 (E.D. Mich. 2020) (finding it "difficult to imagine a more timely intervention" than one filed twenty business days after the complaint). Additionally, Proposed Intervenors seek to intervene to safeguard their and their members' fundamental rights. This is unquestionably a "legitimate" purpose, such that "the motion to intervene [is] timely in light of the stated purpose for intervening." *Kirsch v. Dean,* 733 F.App'x 268, 275 (6th Cir. 2018)*.* Nor is there any plausible risk of prejudice to other parties if intervention is granted. Proposed Intervenors are prepared to follow any briefing schedule the Court sets and participate in any future hearings or oral arguments, without delay. Finally, there are no unusual circumstances that should dissuade the Court from granting intervention.

**B.**     **Proposed Intervenors have significant protectable interests that may be impaired by this litigation.**

Proposed Intervenors have significant cognizable interests that may be impaired by Plaintiffs' action. Intervenors "must have a direct and substantial interest in the litigation such that it is a real party in interest in the transaction which is the subject of the proceeding." *Reliastar Life Ins Co. v. MKP Invs.*, 565 F.App'x 369, 372 (6th Cir. 2014) (quotations and citations omitted). In the Sixth Circuit, this requirement has been described as "rather expansive," *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), and one that courts should "construe[] liberally," *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). For example, the Sixth Circuit has explained that an intervenor need not have the same standing necessary to initiate a lawsuit and has rejected the notion that Rule 24(a)(2) requires a "specific legal or equitable interest." *Mich. State AFL–CIO*, 103 F.3d at 1245. Rather, the burden of establishing impairment of a protectable interest is "minimal," *id.* at 1247, and an intervenor need only demonstrate that impairment is *possible*, *see Purnell*, 925 F.2d at 948. Moreover, courts should resolve "close cases" "in favor of recognizing an interest under Rule 24(a)." *Michigan State AFL-CIO*, 103 F.3d at 1247.

Here, Proposed Intervenors have several legally cognizable interests that may be impaired by this lawsuit. *First*, Proposed Intervenors have an interest in preventing the nullification of their and their members' individual constitutional rights. At stake in this litigation are more than a dozen voting-related rights and the right to amend the constitution by petition. *See* Mich. Const. art. II, § 4; *id.* art. XII, § 2. The individual intervenors indisputably have a cognizable interest in preventing infringement of their constitutional rights. *See, e.g.*, *Baker v. Carr*, 369 U.S. 186, 207–08 (1962) (finding impairment of the right to vote is a legally cognizable injury). And the organizational intervenors have an interest in protecting their members' constitutional rights. *See Am. C.L. Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 646 (6th Cir. 2004) (finding organization had standing when

8

its members were "threatened with the imminent denial of their right to vote" and because the "case addresse[d] citizens' right to vote . . . which [fell] squarely withing the [organization]'s purpose"); *Ohio Org. Collaborative v. Husted*, 189 F. Supp. 3d 708, 726 (S.D. Ohio 2016) (finding organization "established an injury in fact" where "the challenged provisions will make it more difficult for its members and constituents to vote"), *rev'd on other grounds sub nom. Ohio Democratic Party v. Husted*, 834 F.3d 620 (6th Cir. 2016).

*Second*, Proposed Intervenors have a cognizable interest in maintaining the ballot-initiative process. Their interest is not merely in the enforcement of the Voter-Approved Amendments; they have a distinct interest in the *process* by which these constitutional amendments were passed. *See Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 781 (6th Cir. 2007) ("the public at large—including public interest groups—has an interest in the procedure by which a given legal requirement is enacted as a matter of democratic legislative process" (quotation omitted)). Citizens cannot always rely on their elected officials to represent their interests. (Indeed, this very lawsuit evidences as much, where Rep. Carra and Sen. Lindsey seek to deny their constituents, including Proposed Intervenor Mr. Pedersen, of the rights in question.) This is precisely why the people reserved for themselves the power in the Michigan Constitution to reform their own laws. Proposed Intervenors have a substantial interest in maintaining that ability with respect to election-related laws.

*Third*, the Alliance and DDP are currently plaintiffs in an active state court case brought under Article II, § 4—the same constitutional provision Plaintiffs seek to invalidate. The Alliance and DDP brought that case to protect their members' fundamental right to vote as guaranteed by the Michigan Constitution. This lawsuit threatens to irreparably harm the very rights that the Alliance and DDP seek to protect in the pending state court case. Their interest in avoiding such

an adverse outcome, alone, is sufficient to grant intervention as of right. *See Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (finding interest requirement satisfied when intervenors "st[oo]d to gain or lose" in other pending litigation "by the direct legal operation of the . . . court's judgment"); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081–82 (8th Cir. 1999) (finding interest requirement "easily satisfie[d]" where "[t]he disposition of the lawsuit . . . may require resolution of legal and factual issues bearing on the validity of [] agreements" in which proposed intervenor had interests).

*Fourth*, Plaintiffs' requested relief would frustrate the missions of the Alliance, DD APRI, and DDP and require them to divert time and resources from their other activities to remedy the erosion of their members' constitutional rights. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) ("[A]n organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose."). All three organizations share a common mission to erect structural changes that safeguard and promote the right to vote. Plaintiffs' requested relief is diametrically opposed to that mission; it would nullify a suite of voting-related constitutional rights and strip the organizations and their members of their right to use ballot initiatives to enact further changes related to the times, places, and manner of federal elections. Losing the right to use ballot initiatives for these purposes would, in turn, require DD APRI, the Alliance, and DDP to start new programs to influence election laws. If their members are no longer able to band together to reform their own laws, the organizations will be forced to spend time and resources lobbying the Legislature on voting and election-related issues every year. Such an expenditure would necessarily divert resources from these organizations' other activities, such as their robust public policy and issue advocacy work. In turn, the frustration to their mission and diversion of resources imposes

cognizable harm on the organizations and their members. *See, e.g.*, *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (finding "concrete and particular" injury where plaintiffs alleged that, but for defendants' conduct, they "would be able to allocate substantial resources to other activities central to [their] mission[s]" (alterations in original) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law required "organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc).

### C. Proposed Intervenors' interests are not adequately represented by the current parties.

Proposed Intervenors' interests are not adequately represented by Plaintiffs or Defendants. "Although a would-be intervenor is said to shoulder the burden with respect to establishing that its interest is not adequately protected by the existing parties to the action, this burden 'is minimal because it is sufficient that the movant[] prove that representation *may* be inadequate.'" *Mich. AFL-CIO*, 103 F.3d at 1247 (alteration in original) (emphasis added) (quoting *Linton by Arnold v. Comm'r of Health & Env't, State of Tenn.*, 973 F.2d 1311, 1319 (6th Cir. 1992)). "The question of adequate representation does not arise unless the applicant is somehow represented in the action. An interest that is not represented at all is surely not 'adequately represented,' and intervention in that case must be allowed." *Grubbs v. Norris*, 870 F.2d 343, 347 (6th Cir. 1989).

Where one of the original parties to the suit is a government entity whose "views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," courts have found that "the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (citing *Conservation L. Found. of New England, Inc. v.*

11

*Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)). Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

While Defendants have an interest in defending the state laws challenged in this suit, Proposed Intervenors have additional objectives: maintaining their and their members' constitutional rights, protecting their ability to further amend the Michigan Constitution by ballot initiative, safeguarding the ability to enforce their fundamental voting rights in court, and avoiding the frustration of their organizational missions and diversion of their resources. Proposed Intervenors thus have specific interests and concerns that neither Defendants nor any other party share. *See Paher v. Cegavske*, No. 3:20-cv-00243, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020) (granting intervention as of right where proposed intervenors "may present arguments about the need to safeguard [the] right to vote that are distinct from [state defendants'] arguments").

Proposed Intervenors know first-hand that government entities do not always share their interests when it comes to voting rights. The Alliance and DDP are in active litigation against the Attorney General to challenge a law that interferes with the fundamental right to vote. *Babb v. Nessel*, No. 2023-202028-CZ (Mich. Cir. Ct. Oakland Cnty.). And both the Alliance and DD APRI have previously sued Secretary Benson, a Defendant in this case, to challenge absentee voting restrictions. *Michigan All. for Retired Ams. v. Sec'y of State*, 964 N.W.2d 816, 820 (Mich. Ct. App.

2020).

Because Proposed Intervenors' particular interests are not shared by the present parties, they cannot rely on Defendants or anyone else to provide adequate representation. They have thus satisfied the four requirements for intervention as of right under Rule 24(a)(2), and their motion should be granted.

## II.   Alternatively, Proposed Intervenors should be granted permissive intervention.

Even if Proposed Intervenors were not entitled to intervene as of right, permissive intervention is warranted under Rule 24(b). "Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA*, 448 F. Supp. 3d at 759–60 (citing *Grubbs*, 870 F.2d at 345). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The interest of the intervenors, for the purposes of permissive intervention, only needs to be "different" from the defendants, regardless of whether it is "substantial." *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018).

Proposed Intervenors easily meet these requirements. First, their motion is timely, and intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See supra* Argument I.A. Moreover, Proposed Intervenors' interests are distinct and not adequately represented by the existing defendants. *See supra* Argument I.C. And Proposed Intervenors will undoubtedly raise common questions of law in opposing Plaintiffs' suit, including whether Plaintiffs are entitled to the extraordinary and unprecedented relief they seek, and whether Supreme Court precedent forecloses Plaintiffs' claim. Moreover, Proposed Intervenors' interests

13

are constitutional in nature and extend to two of the most fundamental rights protected by the Michigan Constitution: the right to vote and the right to engage in direct democracy. Proposed Intervenors' participation in this action will contribute to the full development of the issues in this action and will aid the Court in adjudicating this matter.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that this Court grant their motion to intervene.

Dated: October 11, 2023                     Respectfully submitted,

/s/ *Sarah Prescott*
Sarah S. Prescott (P70510)
Salvatore Prescott Porter & Porter, LLC
105 East Main Street
Northville, Michigan 48167
248.679.8711
sprescott@spplawyers.com

Aria C. Branch*
Jyoti Jasrasaria
Samuel T. Ward-Packard*
Julie Zuckerbrod*
Attorneys for Plaintiffs
Elias Law Group
250 Massachusetts Ave, NW, Ste 400
Washington, DC 20001
202.968.4490
abranch@elias.law
jjasrasaria@elias.law
swardpackard@elias.law
jzuckerbrod@elias.law

*Counsel for Proposed Intervenor-Defendants*

*Admission pending

14

**CERTIFICATE OF SERVICE**

Sarah Prescott certifies that on the 11th day of October 2023, she served a copy of the above document in this matter on all counsel of record and parties via the ECF system.

/s/ *Sarah S. Prescott*
Sarah S. Prescott