UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SENATOR JONATHAN LINDSEY, SENATOR JAMES RUNESTAD, REPRESENTATIVE JAMES DESANA, REPRESENTATIVE RACHELLE SMIT, REPRESENTATIVE STEVE CARRA, REPRESENTATIVE JOSEPH FOX, REPRESENTATIVE MATT MADDOCK, REPRESENTATIVE ANGELA RIGAS, REPRESENTATIVE JOSH SCHRIVER, REPRESENTATIVE NEIL FRISKE, and REPRESENTATIVE BRAD PAQUETTE, | No. 1:23-cv-01025 HON. JANE M. BECKERING MAG. PHILLIP J. GREEN **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs,

v

GRETCHEN WHITMER, in her official
capacity as Governor of Michigan, or her
successor, JOCELYN BENSON, in her
official capacity as Michigan Secretary of
State, or her successor, and JONATHAN
BRATER, in his official capacity as Director
of Elections, or his successor

Defendants.

_____

Erick G. Kaardal (MN No. 229647)
Attorney for Plaintiffs
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
612.465.0927
kaardal@mklaw.com

David A. Kallman (P34200)
Stephen P. Kallman (P75622)
Attorneys for Plaintiffs
5600 West Mt. Hope Highway, Suite 2
Lansing, Michigan 48917
517.322.3207
dave@greatlakesjc.org
steve@greatlakesjc.org
_____/

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants Whitmer,
Benson and Brater
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants Whitmer,
Benson, and Brater
PO Box 30736
Lansing, Michigan 48909
517.335.7659

Dated:  January 8, 2024

# TABLE OF CONTENTS

Page

Table of Contents ............................................................................................... i

Index of Authorities ............................................................................................ ii

Concise Statement of Issues Presented ..................................................... iv

Introduction .......................................................................................................... 1

Statement of Facts ............................................................................................. 2

Standard of Review ............................................................................................ 5

Argument ............................................................................................................... 6

I.    Plaintiffs lack standing. ............................................................................ 6

      A.    Overview of standing principles. ............................................... 7

      B.    Plaintiffs face no concrete and particularized injury. ............... 9

            1.    Plaintiffs' legislator-standing theory fails. ..................... 9

            2.    Plaintiffs' voter-standing theory fails. ....................... 11

            3.    Plaintiffs' taxpayer-standing theory fails. ................... 14

      C.    Legislative enactments render Plaintiffs' challenge to the 2018
            and 2022 Amendments non-redressable. ............................. 16

      D.    Plaintiffs' challenge to future, unidentified use of the proposal
            process is speculative. .......................................................... 17

II.   Controlling precedent rejects the merits of Plaintiffs' claim. ......... 18

Conclusion and Relief Requested .............................................................. 23

# INDEX OF AUTHORITIES

Page

## Cases

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005)........ 6

*Allen v. Wright*, 468 U.S. 737 (1984) .......................................................................... 11

*Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787 (2015) ... 10, 19, 22

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)................................ 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)......................................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 6

*California v. Texas*, 141 S. Ct. 2104 (2021) ............................................................... 16

*Citizens in Charge v. Husted*, Nos. C2-08-1014, C2-10-095, 2011 WL 3652701 (S.D. Ohio Aug. 9, 2011)............................................................................................. 17

*Coal Operators and Assocs., Inc. v. Babbitt*, 291 F.3d 912 (6th Cir. 2002) ................ 8

*Coyne v. Amer. Tobacco Co.*, 183 F.3d 488 (6th Cir. 1999) .......................................... 8

*Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438 (6th Cir. 2017).............................. 9

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)........................................... 14, 15

*Flast v. Cohen*, 392 U.S. 83 (1968) ............................................................................. 15

*Hawke v. Smith*, 253 U.S. 221 (1920) ......................................................................... 21

*Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587 (2007) ........................... 15

*Kerr v. Hickenlooper*, 824 F.3d 1207 (10th Cir. 2016)................................................ 10

*Lance v. Coffman*, 549 U.S. 437 (2007)....................................................................... 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)......................................... 8, 16, 17

*Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017)................................................................. 5

*Mann Constr., Inc. v. United States*, 86 F.4th 1159 (6th Cir. 2023) ......................... 16

*Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378 (6th Cir. 2020)............ 17

*Moore v. Harper*, 143 S. Ct. 2065 (2023) ................................................................ 22

*Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565 (1916).........................................21, 22

*Raines v. Byrd*, 521 U.S. 811 (1997)......................................................................... 10

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996) ........... 5

*Rogers v. Stratton Indus.*, 798 F.2d 913 (6th Cir. 1986) ............................................. 5

*Smiley v. Holm,* 285 U.S. 355 (1932) ....................................................................21, 22

*Taylor v. KeyCorp.*, 680 F.3d 609 (6th Cir. 2012) ....................................................... 7

*Tenn. ex rel. Tenn. Gen. Assembly v. United States Dep't of State*, 931 F.3d
    499 (6th Cir. 2019) ........................................................................................ 9, 10

*Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552
    F.3d 430 (6th Cir. 2008) ................................................................................. 5, 6

*United States* v. *Richardson*, 418 U.S. 166 (1974) .................................................... 11

*Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945 (2019) ........................... 9, 11

*Whitmore v. Arkansas,* 495 U.S. 149 (1990) ................................................................ 8

**Rules**

Fed. R. Civ. P. 8(a)(2)................................................................................................ 6

Fed. R. Civ P. 12(b)(1)............................................................................................... 7, 23

Fed. R. Civ. P. 12(b)(6)............................................................................................ 5, 23

**Constitutional Provisions**

Mich. Const. 1963, Art. II, § 4(2)............................................................................. 4

Mich. Const. 1964, Art. IV, § 27 ............................................................................. 5

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.      Whether Plaintiffs lack standing in their capacities as individual legislators?

2.      Whether Plaintiffs have failed to state a valid claim where the U.S. Supreme Court has previously held that the Election Clause of the U.S. Constitution permits a state's voters to regulate congressional elections through an initiative process?

## INTRODUCTION

Plaintiffs are individual state legislators who seek a declaration that Michigan's adoption of constitutional amendments through a citizen-led initiative process violates their rights "as legislators" under the Elections Clause of the U.S. Constitution.  Plaintiffs contend that where the federal constitution provides that the times, places, and manner of elections is to be "proscribed in each state by the Legislature thereof," that language precludes the people of Michigan from restraining their legislature in how that power is exercised.

But Plaintiffs have not been authorized by the Michigan legislature to represent it in this action and the Sixth Circuit has held that individual legislators—such as Plaintiffs here—lack standing to raise constitutional challenges on behalf of legislative bodies.  Nor do they have standing to sue in their capacities as voters or taxpayers.

Further, the U.S. Supreme Court has repeatedly held that state legislative authority under the Elections Clause is subject to the constraints imposed by the people in their state constitution.  Plaintiffs assert that they have a power superior to what the Michigan constitution provides them, but no case supports their claim. In fact, Plaintiffs' claim—as the U.S. Supreme Court has observed—is inconsistent with the framers' understanding that when legislatures make laws, they are bound by the provisions of the very documents that give them life.

For these reasons, Plaintiffs' claims must be dismissed for lack of standing and for failure to state a claim upon which relief may be granted.

## STATEMENT OF FACTS

Plaintiffs Senator Jonathan Lindsey, Senator James Runestad, Representative James DeSana, Representative Rachelle Smit, Representative Steve Carra, Representative Joseph Fox, Representative Matt Maddock, Representative Angela Rigas, Representative Josh Schriver, Representative Neil Friske, and Representative Brad Paquette are all Michigan state legislators.  (ECF No. 1, PageID.4, ¶14.)  Plaintiffs further allege that they are "voters and taxpayers" in Michigan.  *Id.*

Plaintiffs ask this Court to declare that the U.S. Constitution's Elections Clause invalidates any use of Michigan's voter-initiated ballot proposal process to regulate the time, place, or manner of any federal election, including voting-related proposals enacted by voters in the 2018 and 2022 general elections.  (ECF No. 1, PageID.15, ¶¶ 1, 3.)  They also ask the Court to enjoin Defendants from "funding, supporting, or facilitating" the implementation of those constitutional amendments approved by the voters in 2018 and 2022 to the extent they regulate federal elections, as well as any future use of the voter-initiated ballot-proposal process to the extent it might result in regulation of the time, place, or manner of any federal election.  (ECF No. 1, PageID.15.)

### The Proposal Process and Its Use in 2018 and 2022

Article XII, § 2 of the Michigan Constitution provides that "Amendments may be proposed to this constitution by petition of the registered electors of this state." Such petitions are required to be signed by registered electors of the state equal to

2

at least 10 percent[1] of the total vote cast for all candidates for governor in the last preceding election. *Id.* A petition that is determined to have a sufficient number of signatures is submitted to the electors at the next general election. *Id.* If the proposed amendment is approved by a majority of the electors voting on the question, it becomes part of the state constitution. *Id.* Michiganders are quite familiar with this process. Since ratification of the 1963 Constitution, they have proposed 35 constitutional amendments.[2] They also take a discerning approach to this responsibility: during that period, the voters have rejected more than a quarter of the proposals submitted to them.[3]

Pursuant to this process, voters amended Article II of the Michigan Constitution through passage of Proposal 3 of 2018 and Proposal 2 of 2022 (the "2018 and 2022 Amendments"). The vast majority of these amendments consisted of significant additions to Article II, § 4 that clarified various voting-related rights.[4]

---

[1] The current number of signatures required is 446,198. See Petition Manual: Statewide Initiative, Referendum, Constitutional Amendment Petitions, Partisan Nominating, and Petitions for State and Federal Office, available at https://www.michigan.gov/sos/-/media/Project/Websites/sos/25delrio/SOS_ED105_County_Pet_Form_77019_7.pdf?rev=51b5790c3b2a4fd182c708be55820ff3&hash=5AF6E43E829AFC0B18F801554C2083EC (accessed January 8, 2024).

[2] See Initiatives and Referendums under the Constitution of the State of Michigan of 1963, available at https://www.michigan.gov/sos/-/media/Project/Websites/sos/01mcalpine/Initia_Ref_Under_Consti_1208.pdf?rev=4d40debac96d42feb2f6ee9a0b2580be (accessed January 8, 2024).

[3] *Id.*

[4] Compare the version of Article II, § 4 as adopted by the people in 1963, see michiganconstitution1963asratified.pdf, with its amended version, see mcl-Article-II-4.pdf (mi.gov) (accessed January 8, 2024).

3

The 2018 Amendment expressly set out rights to a secret ballot, to ballot access for military and overseas voters, to straight-ticket voting, automatic registration, to registration by mail before the 14th day before an election, to in-person registration with appropriate identification, to absent voting without cause, and to an election audit.  (ECF No. 4, PageID.24-2.)[5]  Similarly, the 2022 Amendment clarified the scope of the "fundamental right to vote" and identified various additional voting-related rights, including having one's absent-voter ballot counted so long as it is postmarked by election day and received within 6 days of election day, to prove one's identity through various means, to pre-paid ballot return envelopes, and to secure absent ballot drop boxes.  (ECF No. 4, PageID.26-29.)[6]

**Relevant Legislation Enacted by the Legislature**

Since its adoption, the Michigan Constitution of 1963 has authorized the legislature to "enact laws to regulate the time, place, and manner of all . . . elections," "except as otherwise provided" in the constitution.  Mich. Const. 1963, Art. II, § 4(2).  The voting-related rights identified and clarified by the 2018 and

---

[5] The ballot language was approved by the Board of State Canvassers, September 7, 2018, meeting minutes, Board of State Canvassers, available at https://www.michigan.gov/sos/-/media/Project/Websites/sos/BSC-Meeting-Minutes/Sep-07-2018-BSC-Meeting-Minutes.pdf?rev=0297354945fa48da8a3c52c9301e8509&hash=361CA4A274F04E27DB2BCCD4BDAF780A (accessed January 8, 2024).

[6] The ballot language was approved by the Board of State Canvassers, August 31, 202, meeting minutes, Board of State Canvassers, available at https://www.michigan.gov/sos/-/media/Project/Websites/sos/BSC-Meeting-Minutes/Aug-31-2022-BSC-Meeting-Minutes.pdf?rev=46ac4a4b95854ddebab717ffb6a39304&hash=EEFBCE56AF66A2A9E7D4F4D6564C1234 (accessed January 8, 2024).

2022 Amendments at issue in this case are explicitly "self-executing," Mich. Const. 1963, Art. II, § 4(1), meaning no implementing legislation is necessarily required. The Michigan legislature nevertheless has passed more than 20 laws codifying (and expanding upon) those rights.  (*See* Exhibit A, List of Enacted laws.)  All these statutes were enacted by the Michigan legislature in accordance with the normal legislative process and are now, or will be upon their effective dates, state law. Mich. Const. 1964, Art. IV, § 27.

## STANDARD OF REVIEW

Whether a party has Article III standing is properly an issue of a court's subject matter jurisdiction under Rule 12(b)(1).  *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).  Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1)[,] ... the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)) (emphasis omitted).

When considering a 12(b)(6) motion to dismiss for failure to state a claim, although the Court should presume that all well-pleaded material allegations of the complaint are true, *see Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). Moreover, the court need not accept as true legal conclusions or unwarranted factual inferences. *Total Benefits*, 552 F.3d at 434.

To survive dismissal, the plaintiff's claim must be plausible. *Bell Atl. Corp.,* 550 U.S. at 555. The inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, in evaluating the sufficiency of a plaintiff's pleadings, this Court may make reasonable inferences in the non-moving party's favor, "but [this Court is] not required to draw [P]laintiffs' inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

## ARGUMENT

## I.    Plaintiffs lack standing.

Plaintiffs' complaint does not satisfy the requirements of Article III standing. They identify three theories of injury, each of which flies in the face of controlling precedent. They assert that, as *legislators*, they can sue to vindicate the Michigan legislature's authority under the Elections Clause. (ECF No. 1, PageID.12-13, ¶¶ 65-76.) But the Supreme Court and the Sixth Circuit have directly rejected this type of "legislator standing." Plaintiffs next assert that, as *voters*, they are injured by having their votes being "wasted" on referenda they believe are unlawful and

being subjected to an electoral system they believe to be unlawful. (ECF No. 1, PageID.4, ¶¶ 80-83.)  But controlling precedent explains that those types of generalized grievances do not satisfy Article III.  Finally, Plaintiffs assert that, as *taxpayers*, they can challenge the use of public funds to implement election regulations they view to be unlawful.  But controlling precedent strictly limits taxpayer standing to claims under the Establishment Clause, which Plaintiffs do not bring.

Even putting aside Plaintiffs' inability to identify a concrete and particularized injury, their claims suffer from two other fatal Article III flaws. First, Plaintiffs' request for invalidation of the 2018 and 2022 Amendments are not redressable because the legislature has independently codified nearly all of those policies into Michigan's election statutes.  Even if Plaintiffs prevail, the policies they challenge will continue in force.  As a result, their challenge to the 2018 and 2022 Amendments seek an advisory opinion.  Second, Plaintiffs' attempt to challenge *any* future use of the proposal process to regulate federal elections, which identifies no specific effort to enact a voting-related proposal, is far too speculative to satisfy Article III's imminence requirement.

## A.    Overview of standing principles.

When the plaintiff lacks standing to bring claims in federal court, this Court lacks subject-matter jurisdiction, requiring dismissal under Fed. R. Civ. P. 12(b)(1). *Taylor v. KeyCorp.*, 680 F.3d 609, 612-13 (6th Cir. 2012).  "It is well established… that before a federal court can consider the merits of a legal claim, the person

seeking to invoke [its] jurisdiction … must establish the requisite standing to sue." *Whitmore v. Arkansas,* 495 U.S. 149, 154-55 (1990) (internal quotations omitted.) And with good reason.  "[T]he standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into a 'vehicle for the vindication of the value interests of concerned bystanders.' " *Coal Operators and Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002) (quoting *Coyne v. Amer. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (internal citations and quotations omitted.)).

The elements of Article III standing require a plaintiff to have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

To plead an injury in fact, the party invoking federal jurisdiction must establish an "invasion of a legally protected interest"; that the injury is both "concrete and particularized"; and that the injury is "actual or imminent, not conjectural or hypothetical." *Id*. at 560.  To be concrete and particularized, an injury must "affect the plaintiff in a personal and individual way." *Id*. at 560 n.1. And to surpass the imminence requirement, a claim of injury must identify an injury that is "*certainly* impending"—a "plaintiff [who] alleges only an injury at [an] indefinite future time" stretches the Court's jurisdiction "beyond the breaking point." *Id*. at 564 n.2 (quoting *Whitmore* v. *Arkansas*, 495 U.S. 149, 158 (1990)).

**B.    Plaintiffs face no concrete and particularized injury.**

Plaintiffs' complaint proposes three ways by which use of Michigan's proposal process to regulate federal elections injures them.  Each runs headlong into controlling precedent.

**1.    Plaintiffs' legislator-standing theory fails.**

Controlling case law quickly disposes of Plaintiffs' assertion that they "have individual legislator standing to challenge usurpation of state legislative powers." (ECF 1, PageID.12, ¶ 65).  The Supreme Court has stated exactly the opposite: "individual members *lack* standing to assert the interests of a legislature." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019) (emphasis added). So has the Sixth Circuit: "[a]n individual legislator, or group of legislators, do not have Article III standing based on an allegation of an institutional injury, or a complaint about a dilution of legislative power[.]"  *Tenn. ex rel. Tenn. Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 514 (6th Cir. 2019).

 "The general rule that individual legislators lack standing to sue in their official capacity as [members of a legislature] follows from the requirement that an injury must be concrete and particularized."  *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 453 (6th Cir. 2017).  Plaintiffs' claim here—that Michigan's proposal process nullifies the legislature's authority to regulate the time, place, or manner of federal elections—presents "a type of institutional injury (the diminution of legislative power), which necessarily damages all Members of [the legislature] and both Houses [] equally." *Tennessee*, 931 F.3d at 514 (quoting *Raines v. Byrd*, 521

U.S. 811, 821 (1997)).  Because the "nature of that injury" is "abstract and widely dispersed" among the legislative body, individual legislators cannot "claim a 'personal stake' in [such a] suit," rendering their alleged injury "'[in]sufficiently concrete' to establish Article III standing." *Id.* (quoting *Raines*, 521 U.S. at 830); *see also Kerr v. Hickenlooper*, 824 F.3d 1207, 1214 (10th Cir. 2016) ("[A]n individual legislator cannot 'tenably claim a personal stake' in a suit based on such an institutional injury.") (quoting *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 802 (2015)).  The same holds true of the Plaintiffs here: they hold no personal stake in the Michigan legislature's authority to regulate the state's elections.[7]

Of course, an individual legislator (or group of legislators) may sue as an *authorized* representative of a legislative body if they have been expressly chosen by the body to do so.  *Tennessee*, 931 F.3d at 514; *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 801-02 (2015) (distinguishing a suit brought by individual legislators with one brought by the legislature itself or an authorized member).  But Plaintiffs offer no allegation that the Michigan legislature has authorized them to serve as its representative in this litigation.  Perhaps that is unsurprising, given that the legislature has independently codified into statute the election regulations approved by the 2018 and 2022 Amendments that Plaintiffs

---

[7] The mere fact that Plaintiffs are a (small) group of legislators, as opposed to just one legislator, does not change this calculus.  *Tennessee*, 931 F.3d at 514 (rejecting the standing of a "group of legislators" to assert such a claim).  Plaintiffs constitute just two of Michigan's 38 state senators, and 9 of Michigan's 110 state representatives—a tiny fraction of their respective chambers.

now seek to invalidate.  *See supra*, Section I.C.  Plaintiffs have either been unable to convince their colleagues to authorize this suit, or they have not tried.  Either way, Plaintiffs "cannot alone [pursue] the litigation against the will of [their] partners in the legislative process."  *Bethune-Hill*, 139 S. Ct. at 1956.

Plaintiffs lack standing to pursue their Elections Clause claim in their capacities as members of the legislature.

### 2.    Plaintiffs' voter-standing theory fails.

Controlling precedent also rejects Plaintiffs' voter-standing theory.  Time and again, the Supreme Court has held that federal courts are not venues for plaintiffs to assert a bare right "to have the Government act in accordance with law."  *Allen v. Wright*, 468 U.S. 737, 754 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 126–27 (2014).  When a plaintiff's alleged injury is undifferentiated and common to all members of the public, courts routinely dismiss such cases as "generalized grievances" that cannot support standing.  *United States* v. *Richardson*, 418 U.S. 166, 173–75 (1974).

Plaintiffs' voter-standing theory, which complains that the election regulations under which they must vote were enacted unlawfully, is a prototypical generalized grievance: every other voter in Michigan could make the exact same claim.  For this reason, the U.S. Supreme Court has squarely held that voters lack standing to assert claims under the Election Clause—precisely what Plaintiffs attempt to do here.  *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam).

In *Lance*, four voters asserted that a provision of the Colorado Constitution limiting the state legislature's ability to pass a redistricting plan was unlawful under the Elections Clause. *Id.* at 438. Holding that the plaintiffs lacked standing, the Court explained that their Elections Clause claim was "obvious[ly]" a generalized grievance: "[t]he only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed." *Id.* at 442. A voter asserting an Elections Clause violation "is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *Id.* (cleaned up).

*Lance* controls this case. The injury Plaintiffs claim as voters—that election regulations are being enacted in violation of the Elections Clause—impacts them no differently than any other voter in Michigan. As a result, they lack standing.

Plaintiffs unsuccessfully attempt to recharacterize their injury by alleging that "when such a referendum violating the Elections Clause is offered, Plaintiffs' personal vote in favor or against the referendum is wasted" because "[t]here was no authority for such a referendum in the first place." (ECF 1, PageID.14, ¶ 81). But that too is the case for every Michigan voter who casts a vote on the proposal. It is also unclear how this imposes an injury: if Plaintiffs feel a proposal on the ballot is not authorized, they can simply choose not to cast a vote on that question.

The same applies to Plaintiffs' allegation that the implementation of proposal-enacted election regulations "burden[] Plaintiffs' voting rights." (ECF 1, PageID.14, ¶ 82). Aside from failing to offer any explanation as to how the

12

proposal-enacted regulations burden their voting rights, there is no reason to believe that "burden" injures Plaintiffs any differently than every other voter in the state.

Contrary to Plaintiffs' assertion, Article II, §4(1)(a) of the Michigan constitution provides no support to their voter-standing theory.  (ECF No. 1, PageID.14, ¶80.)  That section provides, in pertinent part: "Any Michigan citizen or citizens shall have standing to bring an action for declaratory, injunctive, and/or monetary relief to enforce the rights created by this part (a) of subsection (4)(1) on behalf of themselves."  As an initial matter, a state law cannot confer standing upon a federal-court plaintiff who otherwise fails to satisfy Article III.  But even if a state law could achieve that result, this one does not.  Section 4(1)(a) specifies that actions under that section "shall be brought in the *circuit court for the county* in which a plaintiff resides"; by its own terms, it does not apply to suits in federal court.  Additionally, §4(1)(a) authorizes suits only to enforce the rights created by that section—the very rights Plaintiffs contend should not exist.  There is no provision in this section for claims seeking to challenge or negate the rights the people sought to reserve for themselves.  The plain language of §4(1)(a) grants standing in state court to enforce those rights—not to undo them in federal court.

Moreover, §4(1)(a) was added to the Michigan constitution through the same citizen petition process that Plaintiffs challenge as being unconstitutional.  While Plaintiffs assert that the provision allowing lawsuits to assert "rights created in the Michigan constitution" can be severed from the parts they seek to challenge, that

argument is inconsistent with the text of the constitution they seek to invoke.  If the Elections Clause theory upon which Plaintiffs premise their claims were correct, then it would necessarily follow that any of the voting-related rights created through constitutional amendment petitions would be invalid.  But by its express terms, Art. II, §4(1)(a) applies specifically only to actions to enforce the rights created that section—which was created through Proposal 2018-3 and the same petition process Plaintiffs contend to be invalid.  So, Plaintiffs' claim of "severability" would leave citizens with "standing" to enforce rights that would—according to Plaintiffs—not exist.  Simply put, in their attempt to pick and choose parts of § 4(1)(a), Plaintiffs are trying to eat their cake and have it too.

Plaintiffs' voter-standing theory fails Article III.

### 3.    Plaintiffs' taxpayer-standing theory fails.

Plaintiffs' "taxpayer standing" theory fares no better than the others. Plaintiffs allege that enforcement of proposal-enacted election regulations injures them as taxpayers because it involves distribution of "state funds to support and enforce" election regulations that Plaintiffs believe are unlawful.  (ECF No. 1, PageID.13-14, ¶¶ 77-79.)  But Article III allows for taxpayer standing only when a plaintiff asserts a claim under the Establishment Clause.  Because Plaintiffs do not assert an Establishment Clause claim, they cannot rely on this theory of standing.

Generally, "state taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006).  This rule makes sense: if

every "taxpayer could sue to challenge any Government expenditure, the federal courts would cease to function as courts of law and would be cast in the role of general complaint bureaus." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007) (plurality op.).  The Supreme Court has recognized just one exception to this rule: a taxpayer has standing to challenge "when he alleges that congressional action under the taxing and spending clause" violates the First Amendment's prohibition against laws respecting the establishment of a religion. *Flast v. Cohen*, 392 U.S. 83, 105-06 (1968).  That narrow exception is premised on the Establishment Clause's unique history and concern—specifically, the Framers' fear "that the taxing and spending power would be used to favor one religion over another or to support religion in general." *Id.* at 104.  Forcing a taxpayer to support a government-preferred religion creates a unique, personal harm.  But in the half-century since *Flast*, the Supreme Court has refused to create any other exception to the rule "that a litigant may not assume a particular disposition of government funds in establishing standing." *DaimlerChrysler*, 547 U.S. at 347-49 (refusing to create an exception for Commerce Clause claims); *see also Harken v. Sperling*, No. 1:23-cv-396-JMB-SJB, ECF No. 9 (W.D. Mich. May 24, 2023) (adopting *Harken v. Sperling*, 2023 WL 3629699, at *2-3 (W.D. Mich. May 1, 2023) (finding plaintiff lacked taxpayer standing because he "does not allege an Establishment Clause violation")).  Plaintiffs' complaint offers no reason to believe that their claim is worthy of breaking that 55-year trend.

**C.    Legislative enactments render Plaintiffs' challenge to the 2018 and 2022 Amendments non-redressable.**

Even if Plaintiffs could identify a concrete and particularized injury, they still lack standing to challenge the vast majority of the 2018 and 2022 Amendments because the legislature has since codified those policies into statute.  To have standing, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. As described above, after voters approved the 2018 and 2022 Amendments, the legislature separately enacted nearly all of the same policies into statutory law. Thus, even if the Court were to issue a judgment in Plaintiffs' favor as to the 2018 and 2022 Amendments, the policies approved by those proposals would almost entirely remain in place.  As a result, as to the vast majority of Plaintiffs' challenge to the 2018 and 2022 Amendments, this Court can "do nothing more than issue a jurisdiction-less 'advisory opinion.'" *Mann Constr., Inc. v. United States*, 86 F.4th 1159, 1162 (6th Cir. 2023) (quoting *California v. Texas*, 141 S. Ct. 2104, 2116 (2021)).

To be sure, a judgment in Plaintiffs' favor would remove a current barrier theoretically preventing the legislature from enacting an election regulation that contravenes the 2018 or 2022 Amendment, should it choose to do so.  But Plaintiffs allege no fact suggesting that the legislature has any intention of doing so.  The mere possibility that the legislature *may*, at some point in the future, wish to enact a statute going beyond what the 2018 or 2022 Amendment permit comes nowhere close to crossing the line between "speculative" redress, which cannot satisfy Article

III, and "likely" redress, which can.  *Lujan*, 504 U.S. at 561.  As a result, this Court lacks subject-matter jurisdiction to entertain Plaintiffs' challenge to the 2018 and 2022 Amendments.

### D.  Plaintiffs' challenge to future, unidentified use of the proposal process is speculative.

Finally, Plaintiffs lack standing to assert their freewheeling challenge to future "use of the petition-and-state-ballot-proposal process . . . for regulation of times, places, and manner of federal elections."  (ECF 1, PageID.15, ¶ 1.)

To have standing to seek prospective declaratory and injunctive relief, a plaintiff must demonstrate an "imminent injury" that is "*certainly impending*"; "allegations of *possible* future injury are not sufficient."  *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted)). Plaintiffs' complaint alleges no facts suggesting that any future proposal touching on the time, place, or manner of federal elections is in process or even being currently contemplated in Michigan.  And the mere fact that prior such proposals have been approved cannot satisfy Article III's imminence requirement.  *See Citizens in Charge v. Husted*, Nos. C2-08-1014, C2-10-095, 2011 WL 3652701, at *4 (S.D. Ohio Aug. 9, 2011) (finding plaintiffs lacked standing to challenge future use of allegedly unlawful petition process when all they alleged was "that they have signed referenda petitions in the past"); *see also Lujan*, 504 U.S. at 564 n.2. Without any factual allegations suggesting that there is a certainly impending

17

proposal to amend the Michigan constitution in a way that regulates federal elections, Plaintiffs lack standing to seek relief against future uses of that process.

## II.    Controlling precedent rejects the merits of Plaintiffs' claim.

This Court should dismiss Plaintiffs' claims for lack of standing. Nevertheless, should this Court look to the merits, Plaintiffs' claims fail on that front as well.  Just a few years ago, the U.S. Supreme Court not only rejected the exact theory on which Plaintiffs' claim wholly relies, but in doing so described the very claim that Plaintiffs now bring as an example of why that theory must be wrong.  Plaintiffs therefore fail to state a claim for relief.

Plaintiffs' sole claim asserts that the use of the Michigan constitution's proposal process to regulate federal elections violates the U.S. Constitution's Elections Clause because it "usurp[s]" the Michigan legislature's authority to write those election rules.  (ECF 1, PageID.9, ¶ 50).  The Elections Clause provides that "The Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."  U.S. Const., Art 1, § 4, Cl. 1.  The Framers inserted the Elections Clause into the federal constitution to prevent "a State [from] refus[ing] to provide for the election of representatives to the Federal Congress"—a "very real concern" at the time, given "the widespread, vociferous opposition to the proposed Constitution."  *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8 (2013).  To serve as an "insurance" against this possibility, the Elections Clause

performs "two functions": "[u]pon the States it imposes the duty ('*shall* be prescribed') to prescribe the time, place, and manner of electing Representatives and Senators; upon Congress it confers the power to alter those regulations or supplant them altogether." *Id.*

The crux of Plaintiffs' claim is an assertion that the Elections Clause's use of the term "Legislature" prohibits the Michigan constitution from giving independent authority to regulate federal elections to both the legislature (via statute) *and* the people (via proposal).  But in 2015, the U.S. Supreme Court squarely held that the Elections Clause poses no such bar.  In *Arizona State Legislature v. Arizona Independent Redistricting Commission* (*ASL*), the Arizona state legislature—not a subset of its membership—challenged a congressional plan enacted by the state's independent redistricting commission, which was created by voters through an initiative process identical in all meaningful respects to Michigan's proposal process.  576 U.S. at 787, 796-97.  The legislature asserted that the constitutional amendment creating the redistricting commission violated the Elections Clause because it authorized regulation of Arizona's congressional elections without the legislature's input.  *Id.* at 792-93.  The Court rejected that theory.  It explained that the Elections Clause neither "diminish[es] a State's authority to determine its own lawmaking processes" nor "disarm[s] States from adopting modes of legislation that place the lead rein in the people's hands."  *Id.* at 824.  Indeed, the Court stated "it would be perverse to interpret the term 'Legislature' in the Elections Clause so as to exclude lawmaking by the people."  *Id.* at 820.  Because Arizona's redistricting

commission was created through an initiative process authorized by the state constitution, its authority to regulate Arizona's congressional elections without any involvement of the state legislature did not offend the Elections Clause. *Id.* at 824.

*ASL* requires dismissal of Plaintiffs' claim here.  Plaintiffs' entire theory is that if a federal-election regulation is enacted through Michigan's proposal process, it "violate[s] the Elections Clause because the Michigan state legislature did not vote and approve it." (ECF 1, PageID.11, ¶ 58.)  But if the Elections Clause allows a state's electorate to confer, through an initiative process, full decision-making authority over an election regulation to a governmental body that is not the state legislature (as in *ASL*), it surely does not prohibit the people from using that process to decide election regulations for themselves.  In fact, the *ASL* Court reasoned that the legislature's theory must have been wrong because a ruling in the legislature's favor might suggest that election regulations enacted directly through popular initiative—precisely what Plaintiffs challenge here—also violate the Elections Clause.  576 U.S. at 822 (rejecting legislature's argument because it would "cast doubt on numerous other election laws adopted by the initiative method legislating" such as California's initiative-enacted permanent voter registration system, Ohio's initiative-enacted prohibition against straight-ticket voting, and Oregon's initiative-enacted 20-day registration deadline).  In other words, the *ASL* Court rejected the legislature's theory in part out of fear that adopting it might *even suggest* that Plaintiffs' claim here has merit.  The *ASL* Court's rejection of the claim presented there compels the rejection Plaintiffs' claim here.

The *ASL* Court's conclusion that the people of a state may regulate federal elections through an initiative process was the logical result of a century of precedent rejecting the type of overexpansive view of the Elections Clause that Plaintiffs attempt to champion here.  In *Ohio ex rel. Davis v. Hildebrant*, the Supreme Court considered a challenge to a provision of the Ohio constitution permitting the state's voters to "approve or disapprove by popular vote any law enacted by the General Assembly," which had been used by voters to reject a redistricting plan through a referendum.  241 U.S. 565, 566 (1916).  The Ohio Supreme Court upheld the referendum, concluding that the Elections Clause— while it conferred power to the state legislatures to regulate elections—did not preclude subjecting legislative acts to a popular vote.  *Hildebrant*, 241 U.S. at 566-567.  The U.S. Supreme Court unanimously affirmed, finding "plainly without substance" the argument that the inclusion of the referendum within the state legislature was repugnant to the Elections Clause.  *Id*. at 569-570; *see also Hawke v. Smith*, 253 U.S. 221, 230-31 (1920) (describing *Hildebrant* as holding that "the referendum provision of the state constitution when applied to a law redistricting the State with a view to representation in Congress was not unconstitutional").

Then, in *Smiley v. Holm,* the Supreme Court unanimously held that a state legislature's exercise of authority under the Elections Clause was subject to the processes imposed by the state constitution for legislative enactments.  285 U.S. 355, 367 (1932).  There, the Court held:

> As the authority is conferred for the purpose of making laws for the State, it follows, in the absence of an indication of a contrary intent,

that the exercise of the authority must be in accordance with the method which the State has prescribed for legislative enactments. We find no suggestion in the Federal constitutional provision of an attempt to endow the legislature of the State with power to enact laws in any manner other than that in which the constitution of the State has provided that laws shall be enacted.

*Smiley*, 285 U.S. at 367-68.

The Supreme Court most recently addressed state legislative authority under the Elections Clause in *Moore v. Harper*, 143 S. Ct. 2065 (2023).  In that decision, the Court surveyed and reaffirmed *Hildebrant, Smiley,* and *Arizona State Legislature*, explaining:

> The significant point for present purposes is that the Court in *Arizona State Legislature* recognized that whatever authority was responsible for redistricting, that entity remained subject to constraints set forth in the State Constitution. The Court embraced the core principle espoused in *Hildebrant* and *Smiley* "that redistricting is a legislative function, to be performed in accordance with the State's prescriptions for lawmaking, which may include the referendum and the Governor's veto." 576 U. S., at 808 . . .; *see also id*., at 840-841 . . . (Roberts, C. J., dissenting) (recognizing that *Hildebrant* and *Smiley* support the imposition of "some constraints on the legislature"). The Court dismissed the argument that the Elections Clause divests state constitutions of the power to enforce checks against the exercise of legislative power: "*Nothing in [the Elections] Clause instructs, nor has this Court ever held, that a state legislature may prescribe regulations on the time, place, and manner of holding federal elections in defiance of provisions of the State's constitution*."

*Moore*, 143 S. Ct. at 2083 (emphasis added).  The Court went on to reject the argument that the Elections Clause granted authority to the state legislatures that was beyond the constraint of state constitutions, stating that argument "simply ignores the precedent just described."  *Id*.  The Court also observed that the argument that the Elections Clause provides unlimited state legislative authority unconstrained by state constitutions "does not account for the Framer's

understanding that when legislatures make laws, they are bound by the provisions of the very documents that give them life," and that the Framers had recognized that state legislatures "are the mere creatures of the State Constitutions, and cannot be greater than their creators." *Id.*

In their complaint, Plaintiffs cite *Moore*'s statement that Michigan's state legislature is "the entity assigned particular authority by the Federal Constitution." (ECF No. 1, PageID.2, ¶2.)  But the complaint fails entirely to address the Supreme Court's holdings in that decision, which directly refutes the premise they seek to advance in this case.

Simply put, Plaintiffs' arguments have already been rejected and the Supreme Court's decision in *ASL* controls.  By providing for constitutional amendments to be adopted through ballot proposals, the people of Michigan have reserved for themselves a small measure of authority to regulate elections that they alone may exercise under specified conditions.  A century of U.S. Supreme Court case law makes unmistakably clear that the Elections Clause poses no threat to that choice.  Plaintiffs' claim fails on the merits.

## CONCLUSION AND RELIEF REQUESTED

Because Plaintiffs lack standing to bring their claims, and where their claims otherwise fail on the merits based on established case law, Defendants Governor Gretchen Whitmer, Secretary of State Jocelyn Benson, and Director of Elections Jonathan Brater respectfully request that this Court grant Defendants' motion to dismiss pursuant to Fed. R. Civ P. 12(b)(1) and (6).

Respectfully submitted,

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants Whitmer,
Benson, and Brater
PO Box 30736
Lansing, Michigan 48909
517.335.7659

Dated:  January 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
P55439