## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JONATHAN LINDSEY, Senator; JAMES RUNESTAD, Senator; JAMES DESANA, Representative; RACHELLE SMIT, Representative; STEVE CARRA, Representative; JOSEPH FOX, Representative; MATT MADDOCK, Representative; ANGELA RIGAS, Representative; JOSH SCHRIVER, Representative; NEIL FRISKE, Representative; and BRAD PAQUETTE, Representative, | CIVIL ACTION<br><br>Case No. 1:23-cv-01025-JMB-PJG<br><br>Hon. Jane M. Beckering |
| Plaintiffs, | |
| v. | **PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO DISMISS** |
| GRETCHEN WHITMER, in her official capacity as Governor of Michigan; JOCELYN BENSON, in her official capacity as Michigan Secretary of State; and JONATHAN BRATER, in his official capacity as Director of Elections, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

Erick G. Kaardal (MN No. 229647)
Attorney for Plaintiffs
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
612.465.0927
kaardal@mklaw.com

David A. Kallman (P34200)
Stephen P. Kallman (P75622)
Attorneys for Plaintiffs
5600 West Mt. Hope Highway, Suite 2
Lansing, Michigan 48917
517.322.3207
dave@greatlakesjc.org
steve@greatlakesjc.org

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants Whitmer, Benson and Brater
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

# Table of Contents

Table of Authorities ....................................................................................................... iii

Factual Background .......................................................................................................... 1

    Successful petition-led ballot proposals in 2018 and 2022 amend the State
    Constitution regulating federal elections without state legislator
    involvement .............................................................................................................. 1

Argument ............................................................................................................................ 4

I.    The standards for review regarding subject matter jurisdiction and the
    sufficiency of stating a claim for which relief can be granted under Rules
    12(b)(1) and 12(b)(6) require this Court to first determine Article III
    standing. ................................................................................................................... 4

II.   The legal standard challenging Article III standing reveals the need to
    demonstrate a redressable, non-hypothetical and connected
    particularized injury ............................................................................................... 5

III.  The Legislators, with defined powers under the Michigan state
    constitution, have Article III standing particularized to them due to their
    federal rights or privileges under the Elections Clause—which are
    supreme pursuant to the Supremacy Clause ........................................................ 6

IV.  The Governor's Rule 12(b)(6) motion should be denied. ................................. 28

Conclusion ....................................................................................................................... 37

## Table of Authorities

Page(s)

## Cases

*Agostini v. Felton,*
   521 U.S. 203 (1997) ...........................................................................................36

*Allstate Ins. Co. v. Global Med. Billing, Inc.,*
   520 F. App'x 409 (6th Cir. 2013) .......................................................................6

*Anderson v. Carkins,*
   135 U.S. 483 (1890) ...........................................................................................13

*Arizona State Legislature v. Arizona Independent Redistricting Com'n,*
   576 U.S. 787 (2015) ...........................................................................19, 21, 23, 36

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
   570 U.S. 1 (2013) ...............................................................................................33

*Armstrong v. Exceptional Child Center, Inc.,*
   575 U.S. 320 (2015) .............................................................................................9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................5, 28

*Barr v. American Association of Political Consultants, Inc.,*
   140 S.Ct. 2335 (2020) .......................................................................................26

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................5, 28

*Blessing v. Freestone,*
   520 U.S. 329 (1997) ...........................................................................16, 22, 32

*Burwell v. Hobby Lobby Stores, Inc.,*
   573 U.S. 682 (2014) ...........................................................................................17

*Bush v. Orleans Parish Sch. Bd.,*
   188 F. Supp. 916 (E.D. La. 1960) .....................................................................13

*Cartwright v. Garner,*
   751 F.3d 752 (6th Cir. 2014) .............................................................................6

*Chapman v. Houston Welfare Rights Organization,*
   441 U.S. 600 (1979) ........................................................................................ 9

*Chapman v. Tristar Prod., Inc.,*
   940 F.3d 299 (6th Cir. 2019) ....................................................................... 4

*Cherry Hill Vineyards, LLC v. Lilly,*
   553 F.3d 423 (6th Cir. 2008) ....................................................................... 5

*Coleman v. Miller,*
   307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) .............................. 18, 19, 20, 21

*Colon-Marrero v. Velez,*
   813 F.3d 1 (1st Cir. 2016) .................................................................. passim

*Cooper v. Aaron,*
   358 U.S. 1 (1958) ....................................................................................... 13

*Crawford v. United States Department of Treasury,*
   868 F.3d 438 (6th Cir.  2017) .................................................................. 21

*Dennis v. Luis,*
   741 F.2d 628 (C.A.3, 1984) ...................................................................... 19

*Diamond v. Charles,*
   476 U.S. 54 (1986) ...................................................................................... 5

*Dobbs v. Jackson Women's Health Org.,*
   142 S.Ct. 2228 (2022) ............................................................................... 36

*Dodak v. State Administrative Bd.,*
   495 N.W.2d 539 (Mich. 1993) ........................................................... passim

*Gibbons v. Ogden,*
   9 Wheat. 1, 6 L.Ed. 23 (1824) .................................................................... 9

*Golden State Transit Corp. v. Los Angeles,*
   493 U.S. 103 (1989) ..................................................................................... 9

*Goldwater v. Carter,*
   617 F.2d 697 (D.C. Cir. 1979) ............................................................. 14, 20

*Gonzaga Univ. v. Doe,*
   536 U.S. 273 (2002) ........................................................... 15, 16, 17, 31

*Hackley Union Nat. Bank v. Farmer,*
  234 N.W. 135 (Mich. 1931) ..........................................................................33

*Henderson ex rel. Henderson v. Shinseki,*
  562 U.S. 428 (2011) ..........................................................................................4

*Hunt v. Washington State Apple Advertising Com'n,*
  432 U.S. 333 (U.S. 1977) ...............................................................................17

*In re Blasingame,*
  585 B.R. 850 (B.A.P. 6th Cir. 2018) .............................................................6

*Kennedy v. Sampson,*
  167 U.S.App.D.C. 192, 511 F.2d 430 (1974) .............................................19

*Kepley v. Lanz,*
  715 F.3d 969 (6th Cir. 2013) ...........................................................................6

*Koenig v. Flynn,*
  285 U.S. 375 (1932) ........................................................................................30

*League of Women Voters of Michigan v. Secretary of State,*
  957 N.W.2d 731 (Mich. 2020) .........................................................24, 26, 27

*M'Culloch v. Maryland,*
  17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819) ........................................13

*Moore v. Harper,*
  600 U.S. 1 (2023) ...........................................................................9, 16, 21, 29

*Mosier v. Evans,*
  90 F.4th 541 (6th Cir.  2024) ....................................................................5, 28

*Mothering J. v. Atty. Gen.,*
  No. 362271, 2023 WL 444874 (Mich. App. Jan. 26, 2023) ...............11, 20

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ........................................................................................36

*Providence Baptist Church v. Hillandale Comm., Ltd.,*
  425 F.3d 309 (6th Cir. 2005) ...........................................................................5

*Raines v. Byrd,*
  521 U.S. 811 ............................................................................................18, 21

*Rancho Palos Verdes,*
    544 U.S 113. ........................................................................................... 17, 31

*Romer v. Colorado Gen. Assembly,*
    810 P.2d 215 (Colo. 1991) .................................................................................19

*Silver v. Jordan,*
    241 F.Supp. 576 (S.D.Cal.1964) .......................................................................25

*Sixty-Seventh Minnesota State Sen. v. Beens,*
    406 U.S. 187 (1972) ...........................................................................................25

*Smiley v. Holm,*
    285 U.S. 355 (1932) ...........................................................................................30

*State by and through Tennessee Gen. Assembly v. U.S. Dept. of State,*
    931 F.3d 499 (6th Cir. 2019) ....................................................................... 14, 22

*Steel Co. v. Citizens For a Better Environment,*
    523 U.S. 83 (2008) .............................................................................................27

*U.S. v. Miller,*
    316 F.2d 81 (6th Cir. 1963) ..............................................................................23

*United States v. Finazzo,*
    288 F.2d 175 (6th Cir. 1961) ............................................................................23

*United States v. Louisiana,*
    364 U.S. 500 (1960) ...........................................................................................13

*United States v. Ritchie,*
    15 F.3d 592 (6th Cir. 1994) .................................................................................6

*Virginia H. of Delegates v. Bethune-Hill,*
    139 S. Ct. 1945 (2019) ...............................................................................passim

*Wisconsin Legislature v. Palm,*
    942 N.W.2d 900 (Wis. 2020) ............................................................................20

*Wright v. Roanoke Redev. & Hous. Auth.,*
    479 U.S. 418 (1987) ...........................................................................................16

**Statutes**

28 U.S.C. § 2201 ............................................................................................................27

42 U.S.C. § 1983 ......................................................................................................passim

Michigan Constitution, Article II ..............................................................3, 11, 24, 26

Michigan Constitution, Article IV ..............................................................2, 8, 18, 32

Michigan Constitution, Article V ................................................................................11

Michigan Constitution, Article VI ..............................................................................18

Michigan Constitution, Article XII ......................................................................passim

U.S. Constitution, Article I ..........................................................................................7

U.S. Constitution, Article V ....................................................................................18, 21

U.S. Constitution, Article VI ......................................................................................13

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ....................................................................6

Federal Rule of Civil Procedure 65 ............................................................................27

The Plaintiffs file this brief in opposition to the government's motion to dismiss. The government argues that the Plaintiffs lack legislator standing to pursue the claims asserted in the underlying complaint. But, the government misses the point that the Plaintiffs as state legislators have an existing federal right or privilege to an opportunity to vote for the enactment of *laws* governing the times, places, and manner of *federal elections* preserved under the U.S. Constitution through the Elections Clause. The Plaintiffs do not improperly claim for their own an injury to the 'body-politic'–the state legislature—because the state constitution, defining what the legislature is, recognizes standing for state legislators when their individual rights or privileges to vote are nullified or usurped. *Dodak v. State Administrative Bd.,* 495 N.W.2d 539, 545 (Mich. 1993). Similarly, when the state legislator's right or privilege to vote on regulating federal elections is completely nullified or usurped by a state constitutional amendment process, the state legislator's federal rights under the Elections Clause are violated—pursuant to the Supremacy Clause.

Therefore, the Plaintiffs, in this case, have standing. The government's motion to dismiss for this reason and for the other reasons stated below should be denied.

## Factual Background

**Successful petition-led ballot proposals in 2018 and 2022 amend the State Constitution regulating federal elections without state legislator involvement.**

The Michigan Constitution can be amended in different ways. Constitutional amendments occur by a citizen-initiated ballot measure, by a legislatively referred constitutional amendment, by a two-thirds vote during one legislative session to place the amendment on the ballot, or, by constitutional convention. Mich. Const. art. XII, §§ 1, 2, 3. *See also,* Plts. Compl. ¶¶ 24–31.

1

The Michigan Constitution expresses the state's vested legislative power within a senate and a house of representatives, under Article IV, § 1:

> Except to the extent limited or abrogated by article IV, section 6 or article V, section 2, the legislative power of the State of Michigan is vested in a senate and a house of representatives.[1]

As elected members of either the Senate or House of Representatives, in order to pass bills under Article IV, section 22, each chamber provides the rules and methodology to ensure each member has that opportunity to vote "yea" or "nay" on any question put before them, that is, on any particular bill. *See e.g.,* Standing Rules of the House of Representatives in Accordance with the Michigan Constitution, Article IV, section 13: Chapter II, Rules 12, 13; Chapter III, Rules 30, 31; Senate Rules: Chapter I-Section 3, 1.302; Chapter III, Section 1, 3.107; Section 5, 3.505.  The Michigan Supreme Court recognizes standing for state legislators when their individual rights or privileges to vote are nullified or usurped. *Dodak,* 495 N.W.2d at 545.

Notably, the Michigan Constitution reserves certain powers to citizens regarding the ability to propose and reject laws:

> The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum.

---

[1] Article IV, § 6 specifically provides legislative authority to independent citizens redistricting commissions for redistricting state legislative and congressional districts.

2

Mich. Const., art. II, § 9. But, the Michigan Constitution expresses a limitation to citizen ballot petitioning authority not to supersede legislative powers—those reserved in "this constitution":

> The power of initiative extends only to laws which the legislature may enact *under this constitution*.

*Id.* Emphasis added.

In this case, Michigan voters, under the process of Michigan Constitution, article XII, § 2, amended the state's constitution by citizen-initiated ballot measure in 2018 and in 2022. Both the 2018 and 2022 constitutional amendment regulated federal elections. Neither the 2018 nor 2022 constitutional amendments had state legislative approval.

In 2018, pursuant to the process of Michigan Constitution, article XII, § 2, Michigan voters approved Michigan Ballot Proposal 3. The proposal reformed Michigan elections by protecting the right to a secret ballot, ensuring access to ballots for military and overseas voters, adding straight-ticket voting, automatically registering voters, allowing any citizen to vote at any time, provided they have a proof of residency, allowing access to absentee ballots for any reason, and auditing election results. Plts. Compl. ¶¶ 34, 37, 38. But, in so doing, Proposal 3, also regulated the times, places and manner of federal elections by amending Section 4 of Article II of the Michigan Constitution. *See,* Plts. Compl. Ex. A; *id,* ¶¶ 35–36.

Notably, Proposal 3, as an amendment to the state constitution, preserved the rights of legislators to enact laws regarding the "time, place, and manner of all…elections" under the Michigan Constitution or the U.S. Constitution:

> (2) Except as otherwise provided in this constitution or *in the constitution or laws of the United States,* the legislature shall enact laws to regulate the time, place and manner of all nominations and elections….

Plts. Compl. Ex. A (original underlining identifying new language) (emphasis added)).

In 2022, pursuant to the process of Michigan Constitution, article XII, § 2, another citizen-initiated ballot measure resulted in another amendment to the Michigan Constitution regulating federal elections:  Michigan Ballot Proposal 2, the Right to Voting Policies Amendment, and also known as Promote the Vote. *Id.* ¶¶ 39, 41.  The amendment changed or modified voting procedures in the state, including federal elections.  *See i.d.,* ¶ 45. Despite an apparent reservation of legislative authority provided "in this constitution or in the constitution or laws of the United States…," the initiated constitutional amendment process was used to amend the Michigan Constitution to regulate the times, places, and manner of federal elections. *Id.,* ¶ 50.

## Argument

I.    **The standards for review regarding subject matter jurisdiction and the sufficiency of stating a claim for which relief can be granted under Rules 12(b)(1) and 12(b)(6) require this Court to first determine Article III standing.**

The Defendants, collectively referred to as the "Governor," have filed a motion to dismiss this action under Rule 12(b)(1) and Rule 12(b)(6).   Def's Br. at 5-6. Under these circumstances, this Court is obligated to confirm jurisdiction under Rule 12(b)(1) before proceeding with any adjudication on the complaint's allegations under Rule 12(b)(6). *See e.g., Chapman v. Tristar Prod., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) ("We are required in every case to determine—sua sponte if the parties do not raise the issue—whether we are authorized by Article III to adjudicate the dispute."); *Henderson ex rel. Henderson v. Shinseki*,

562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). The gravamen of the Governor's jurisdictional argument is that the plaintiffs, collectively referred to as "the Legislators," lack Article III standing to bring the case.

The Governor's Rule 12(b)(6) motion has a different legal standard. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Mosier v. Evans*, 90 F.4th 541 (6th Cir. 2024), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.    The legal standard challenging Article III standing reveals the need to demonstrate a redressable, non-hypothetical and connected particularized injury.

"[A] party seeking to establish Article III standing must show: 1) an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, 2) a causal connection between the injury and the conduct complained of, and 3) a likelihood of redressability by a favorable judgment." *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 318 (6th Cir. 2005) (citing *Diamond v. Charles*, 476 U.S. 54, 65 (1986)); see also *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 428 (6th Cir. 2008) ("[A]n intervenor seeking to appeal, like any other party, must fulfill the requirements of Article III of the Constitution before it can continue to pursue an action in the absence of the party on whose side intervention was permitted.").

A challenge to a party's Article III standing invokes a federal court's subject matter jurisdiction and is properly raised under Federal Rule of Civil Procedure 12(b)(1). *In re Blasingame*, 585 B.R. 850, 858 (B.A.P. 6th Cir. 2018), aff'd, 920 F.3d 384 (6th Cir. 2019) (citing *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 410-11 (6th Cir. 2013) (unpublished) (citations omitted); *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013)). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).

## III.    The Legislators, with defined powers under the Michigan state constitution, have Article III standing particularized to them due to their federal rights or privileges under the Elections Clause—which are supreme pursuant to the Supremacy Clause.

The Governor contends the Legislators lack standing as legislators. Defs. Br. 9–11. However, before addressing the Governor's legal arguments, it is necessary to present the Legislators' complaint in context. *Id.* 18–23.  The Governor's brief admits what the Legislators contend:

> To be sure, a judgment in Plaintiffs' favor would remove a *current barrier* theoretically preventing the legislature from enacting an election regulation that contravenes the 2018 and 2022 Amendment…."

Defs. Br. 16 (emphasis added). Although the Governor's premise is incorrect having identified the "theoretic[al] prevent[ion of] the legislature from enacting" instead of the actual deprivation of the Legislators' federal rights or privileges to vote, the Governor does acknowledge the present consequence of the 2018 and 2022 constitutional amendments as a "current barrier," the rationale for the underlying complaint and the relief sought.

6

Legislators, as members of the state legislature under the Michigan Constitution, have independent federal rights or privileges under the U.S. Constitution's Elections Clause. The Supremacy Clause, which creates no federal rights, ensures that those rights or privileges derived from the Elections Clause cannot be eradicated by any state law or state constitutional amendment that is contrary to the preserved federal rights or privileges.

The Elections Clause granted certain powers and privileges to "state legislatures" to participate in law-making regarding aspects of federal elections:

> "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof…"

U.S. Const. art. I, § 4.

In other words, the Election Clause preserves a right or privilege[2] for the opportunity to enact laws governing federal elections. The right or privilege extends to individual legislators. Although stating the obvious, the Elections Clause refers to "state legislatures," it is equally true that in turn, state legislatures are governed by state constitutions.

The Michigan Constitution expresses the state's vested legislative power within a senate and a house of representatives, under Article IV, § 1:

> Except to the extent limited or abrogated by article IV, section 6 or article V, section 2, the legislative power of the State of Michigan is vested in a senate and a house of representatives.

---

[2] "Privilege" is defined as "a special right, advantage, or immunity granted or available only to a particular person or group." Oxford Dictionary, https://www.google.com/search?q=meaning+of+%22privilege%22&rlz=1C1GCEU_enUS926US926&oq=meaning+of+%22privilege%22&gs_lcrp=EgZjaHJvbWUyBggAEEUYOTIHCAEQABiABDIHCAIQABiABDIHCAMQABiABDIHCAQQABiABDIHCAUQABiABDIHCAYQABiABDIHCAcQABiABDIHCAgQABiABDIHCAkQABiABNIBCTkxOTNqMGoxNagCALACAA&sourceid=chrome&ie=UTF-8 (last visited Jan. 31, 2024).

And, as elected members of either the Senate or House of Representatives, in order to pass bills under Article IV, section 22, each chamber provides the rules and methodology to ensure each member has that opportunity to vote "yea" or "nay" on any question put before them, that is, on any particular bill. *See e.g.,* Standing Rules of the House of Representatives in Accordance with the Michigan Constitution Article IV, section 13: Chapter II, Rules 12, 13; Chapter III, Rules 30, 31; Senate Rules: Chapter I-Section 3, 1.302; Chapter III, Section 1, 3.107; Section 5, 3.505.  The Michigan Supreme Court recognizes standing for state legislators when their individual rights or privileges to vote are nullified or usurped. *Dodak,* 495 N.W.2d at 545.

In this regard, Legislators, as elected members to the legislature, are given opportunities to vote to exercise their authority on bills regarding federal elections consistent with the constitutional mandate of the Elections Clauses. The Elections Clause mandates that legislatures have the authority as a right or privilege to enact laws governing times, places, and manner of federal elections and, in turn, provides individual state legislative members the federal right or privilege, vis-à-vis the opportunity to vote on federal elections laws, subject only to limitations within the federal constitutional. (*E.g.,* congressional acts (Elections Clause)) or state constitutional limitations (*e.g..,* gubernatorial vetoes).

The Supremacy Clause, Art. VI, cl. 2, reads:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The U.S. Supreme Court has held that "[i]t is apparent that this Clause creates a rule of decision: Courts 'shall' regard the 'Constitution,' and all laws 'made in Pursuance thereof,' as 'the supreme Law of the Land.' They must not give effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324 (2015), quoting *Gibbons v. Ogden,* 9 Wheat. 1, 210, 6 L.Ed. 23 (1824). "It is equally apparent that the Supremacy Clause is not the 'source of any federal rights,'" *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) quoting *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 107 (1989) (quoting *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 613 (1979)), and certainly does not create a cause of action. It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so. The Supremacy Clause explicitly identifies the Constitution as the "law."

Hence, as a clause within the U.S. Constitution, the Elections Clause is the "law," specifically delineating the manner of federal elections for senators and representatives, as reserved and preserved with state legislatures. The U.S. Supreme Court, in *Moore v. Harper,* explained that legislative authority regarding federal elections under the Elections Clause is restrained under both the federal and state constitutions:

> When a state legislature carries out its constitutional power to prescribe rules regulating federal elections, the "commission under which" it exercises authority is two-fold. The Federalist No. 78, at 467. The legislature acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by the Federal Constitution. Both constitutions restrain the legislature's exercise of power.

*Moore v. Harper*, 600 U.S. 1, 27 (2023).

9

The following chart compares how the Supremacy Clause and Elections Clause interrelate and allocate "supreme" law-making and other powers to the state legislature, Congress, the President, Governor and certain state constitutional amendment processes:

|  | Supremacy Clause | Elections Clause |
|---|---|---|
| State Legislature | State law-making | Supreme Power – Elections Clause |
| Congress | Supreme Power – Supremacy Clause | Supreme Power – Elections Clause |
| President | Veto | Veto |
| Governor | Veto | Veto |
| Michigan Constitution, article XII, § 1 – state legislatively- approved constitutional amendments | State law-making | Supreme Power – Elections Clause |
| Michigan Constitution, article XII, § 2, non-state legislatively-approved constitutional amendments | State law-making | No legislative power to regulate federal elections under Elections Clause |

Where Congress or a state legislature holds supreme law-making power, it is subject to the constraints of the applicable constitutions. For example, a constitutional provision granting an executive veto is a constraint on the supreme law-making authority conferred on Congress or on a state legislature regarding the enactment of laws.

The Legislators are claiming in this case that the process of Michigan Constitution, article XII, § 2, for non-state legislatively-approved constitutional amendments regulating federal elections violates their federal rights under the Elections Clause.  In this way, the 2018 and 2022 amendments amounted to a complete disenfranchisement, nullification or withdrawal of the Legislators' voting opportunity. The Legislators' voting opportunities are

provided to the Legislators under the state constitution and under the rules of both the State Senate and House of Representatives, as previously discussed, and are preserved as federal rights or privileges through the federal Elections Clause, albeit subject to *congressional acts*.

A short summary of Michigan state law-making provides a more accurate view of the Legislators' law-making powers under the state constitution.  Although there is no question regarding the role of the Legislators in the General Assembly, Article II, section 9 does create a process for the people of Michigan to propose and enact or reject laws by initiative. By a similar procedural process, via referendum, the people may approve or reject laws enacted by the legislature. Under such circumstances, if *laws* were enacted, by the initiative process, "then the initiated law is not subject to the veto power of the governor," and cannot "be amended or repealed, except by a vote of the electors unless otherwise provided in the initiative measure or by ¾ of the members elected to and serving in each house of the legislature." *Mothering J. v. Atty. Gen.*, No. 362271, 2023 WL 444874, at *6 (Mich. App. Jan. 26, 2023), *appeal granted,* 991 N.W.2d 198 (Mich. 2023) quoting Mich. Const. art. II, § 9.

However, such an initiated state law, passed by referendum, is still subject to a Supremacy Clause analysis. The initiated state law could still be amended or repealed by *the members* elected to each house of the legislature voting for such, subject to the Governor's veto.[3]   Accordingly, the Legislators' right or privilege under the Elections Clause to regulate times, places, and manner of federal elections is intact, although it is limited by initiated state laws.

_____

[3] Mich. Const. art. V, § 19.

Of course, the 2018 Proposal 3 and the 2022 Proposal 2 were not initiated laws, but amendments to the Michigan Constitution under the process of Michigan Constitution, article XII, § 2, for non-state legislatively-approved constitutional amendments. Accordingly, each of the constitutional amendments, as alleged in the underlying complaint, derailed the Legislators' federal right or privilege to have the opportunity to vote and have an effect on the laws governing the times, places, and manner of federal elections.

The apparent "savings clause" under the 2018 Proposal 3, now Article II, section 4(2), stating that "[e]xcept as otherwise provided in this constitution or in the constitution or laws of the United States, the legislature shall enact laws to regulate the time, place and manner of all nominations and elections…" is of no remedy for the Legislators. The language "*except as otherwise provided in this constitution*," referring to the Michigan Constitution and the 2018 and 2022 amendments derails any right or privilege the Legislators have as to their individual opportunity to vote on federal election laws as now delineated under Article II as amended. The 2018 and 2022 amendments amounted to a complete disenfranchisement, nullification or withdrawal of the Legislators' voting opportunities. As previously discussed, the Legislators' voting opportunities are guaranteed through the state constitution and rules of both the State Senate and House of Representatives, recognized by the Michigan Supreme Court, and preserved as rights or privileges under the Elections Clause, albeit subject to *congressional acts*.

Like any enacted law in Michigan, however adopted, constitutional amendments to the state constitution, as it relates to the Elections Clause, are likewise subject to a Supremacy Clause analysis. As noted, the Supremacy Clause provides that the "Constitution,

12

and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "By this declaration, the states are prohibited from passing any acts which shall be repugnant to a law of the United States." *M'Culloch v. Maryland*, 17 U.S. 316, 361, 4 Wheat. 316, 4 L.Ed. 579 (1819). "The states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by congress to carry into effect the powers vested in the national government." *Id.* at 317.

Further, "[t]he law of congress is paramount; it cannot be nullified by direct act of any state, nor the scope and effect of its provisions set at naught indirectly." *Anderson v. Carkins*, 135 U.S. 483, 490 (1890). As such, a state's attempt to "interpos[e]" itself against federal law "is illegal defiance of constitutional authority." *United States v. Louisiana*, 364 U.S. 500, 501 (1960) (citing *Bush v. Orleans Parish Sch. Bd.*, 188 F. Supp. 916, 926 (E.D. La. 1960); *Cooper v. Aaron*, 358 U.S. 1 (1958)).

In the context already explained, the Governor's arguments against legislator standing are suspect and unavailing. None of the Legislators are claiming for their own an injury to the 'body politic'—the legislature. Defs. Br. 9. The Governor's cases relied upon are inapposite to the previously demonstrated arguments of the Legislators. The Legislators are not presenting to this Court, what the "body-politic" of the legislature may or may not do regarding the passage of bills affecting federal elections.  The Legislators are not making an allegation of the dilution of legislative power.  Instead, the Legislators are claiming that their federally-guaranteed rights under the Elections Clause are being violated.

In fact, the Governor's brief admits what the Legislators contend, "a judgment in Plaintiffs' favor would remove a *current barrier* theoretically preventing the legislature from enacting an election regulation that contravenes the 2018 and 2022 Amendment…." Defs. Br. 16 (emphasis added).   So, a live, justiciable controversy exists because the 2018 and 2022 amendments are a current barrier to the Legislators exercising their federal rights under the Electors Clause.

The Legislators have a particularized right or privilege under the Electors Clause to have an opportunity to cast a binding vote on state laws regulating federal elections. The 2018 and 2022 amendments deprived them and deprive them of their voting opportunities. The constitutional injury is that the Legislators are left with no legislative power to exercise an equivalent voting opportunity—a clear violation of the Elections Clause. The 2018 and 2022 amendments to the State constitution closed that door. *See, Goldwater v. Carter*, 617 F.2d 697, 703 (D.C. Cir. 1979), *vacated on other grounds,* 444 U.S. 996 (1979).

Indeed, an individual legislator's loss of the right or privilege for the opportunity to vote on the times, places, and manner of federal elections granted to him or her through the Elections Clause is not, as demonstrated, an "institutional injury." Defs. Br. 9, citing *Virginia H. of Delegates v. Bethune-Hill,* 139 S. Ct. 1945, 1952 (2019). The Legislators have not asserted in their complaint that the *legislature* "has suffered…disruption of the legislative process, a usurpation of *its* authority, or nullification of anything *it* has done…." *State by and through Tennessee Gen. Assembly v. U.S. Dept. of State,* 931 F.3d 499, 514 (6th Cir. 2019) (emphasis added). *See* Defs. Br. 9.  The Legislator make no claim of injury to the body-politic—the state legislature—because the injury the Legislators do claim is their own.

Thus, the Legislators have Article III standing. The complaint alleges a live controversy under the Elections Clause identifying a concrete injury regarding a deprivation of an actual, legally-protected interest connected to a federal right or privilege guaranteeing the opportunity to the Legislators to vote on laws regulating federal elections. Because of the 2018 and 2022 amendments were adopted without state legislative approval, the Legislators seek a redressable judgment, that even the Governor has admitted is available. *See* Defs. Br. 16.

Another way to demonstrate standing is through usurpation of legislator rights or privileges in the context of a § 1983 claim.  The Legislator's Complaint allegations state that individual state legislators have federal rights or privileges under the Elections Clause protectable under 42 U.S.C. § 1983. The Civil Rights Act, 42 U.S.C. § 1983, provides a private cause of action when federal rights or privileges are violated by a person under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

To be sure, 42 U.S.C. § 1983, does not itself confer rights, but "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.,* rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Uvir. v. Doe*, 536 U.S. 273, 285 (2002).  People seeking relief through § 1983 do "not have the burden of showing

15

an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes" or by the federal constitution. *Id.*

The U.S. Supreme Court requires an "unambiguously conferred right to support a cause of action brought under § 1983." *Id.* Three factors are identified for the Court to consider:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Colon-Marrero v. Velez*, 813 F.3d 1, 17 (1st Cir. 2016), quoting *Blessing v. Freestone*, 520 U.S. 329 (1997) (quoting *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 431 (1987)) (citations omitted).

In *Moore v. Harper*, 143 S.Ct. 2065 (2023),  the Supreme Court held that the Elections Clause does not vest exclusive and independent authority in state legislatures to set the rules regarding federal elections and, therefore, did not bar the North Carolina Supreme Court from reviewing the North Carolina legislature's congressional districting plans for compliance with North Carolina law.  Consistently, in this case, the Legislators have federal rights or privileges under the Elections Clause for the opportunity to vote on bills regarding the times, places and manner of federal elections.  See Compl. ¶ 21. As the complaint alleges, the Legislators are members of the state legislature and, as members, were injured through the 2018 and 2022 state constitutional amendments that deprived them of those rights or privileges:

> Defendants cause injury to Plaintiffs when they supported and enforced
> laws and when they support and enforce constitutional provisions
> enacted through the petition and ballot question processes that usurp
> the state legislature's powers and violate the state legislator's federal
> rights under the Elections Clause.

Plts. Compl. ¶ 72.

Thus, the first factor—the intent to benefit the Legislators— is established. Under the Elections Clause, the legislators are the intended "class" of beneficiaries to which the Legislators belong. *Rancho Palos Verdes,* 544 U.S. 113, 120(2005); *see also, Gonzaga Univ.* 536 U.S. at 281. The targeted portion of the Elections Clause fits comfortably among federal legal provisions found to create individually enforceable rights because of their "'unmistakable focus on the benefited class.'" *Colon-Marrero,* 813 F.3d at 17, quoting *Gonzaga Univ.* 536 U.S. at 287. The Elections Clause text specifies the "legislature," which as defined under the Michigan Constitution identifies the discrete class of beneficiaries, here, individual legislators.  In that regard, the Legislators are provided the right or privilege for the opportunity to vote on bills regulating federal elections to them as prescribed under the Elections Clause.

In this regard, the phrase "legislature" in the Elections Clause confers federal rights onto the individual state legislators.  By analogy, the U.S. Supreme Court has opined that the purpose of extending rights to corporations is to protect the rights of the people associated with the corporation:

> When rights, whether constitutional or statutory, are extended to
> corporations, the purpose is to protect the rights of these people.

*Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682, 706–07 (2014).   Also, the U.S. Supreme Court has recognized associational standing. *See, e.g., Hunt v. Washington State Apple Advertising*

*Com'n*, 432 U.S. 333, 342 (U.S. 1977). Similarly, the purpose of the Elections Clause extending power to the state legislators is to protect the rights of the individual state legislators.

As the Complaint alleges, the Michigan Constitution, Article 6, section 1, vests the Elections Clause legislative power in individual state legislators, and extends through Senate and House of Representative Rules. Plts. Compl. ¶ 20; *See e.g.,* Standing Rules of the House of Representatives in Accordance with the Michigan Constitution Article IV, section 13: Chapter II, Rules 12, 13; Chapter III, Rules 30, 31; Senate Rules: Chapter I-Section 3, 1.302; Chapter III, Section 1, 3.107; Section 5, 3.505.  So, at least in this case, the Complaint alleges that the Elections Clause reference to "legislature" confers federal rights onto the individual state legislators. *Id.*

The U.S. Supreme Court has taken this legal position on standing, albeit under the provisions of the U.S. Constitution, Article V, for state legislative ratification of federal constitutional amendments, which was referenced in the *Arizona State Legislature* re-districting case under the Elections Clause:

> Closer to the mark is this Court's decision in *Coleman v. Miller,* 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939). There, plaintiffs were 20 (of 40) Kansas State Senators, whose votes "would have been sufficient to defeat [a] resolution ratifying [a] proposed [federal] constitutional amendment." *Id.,* at 446, 59 S.Ct. 972.[11] We held they had standing to challenge, as impermissible under Article V of the Federal Constitution, the State Lieutenant Governor's tie-breaking vote for the amendment. *Ibid. Coleman,* as we later explained in *Raines,* stood "for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." 521 U.S., at 823, 117 S.Ct. 2312. Our

18

conclusion that the Arizona Legislature has standing fits that bill.

*Arizona State Legislature v. Arizona Independent Redistricting Com'n*, 576 U.S. 787, 803 (2015)

(footnotes omitted).

Additionally, the Michigan Supreme Court has recognized that individual state

legislators to bring legislative usurpation claims to challenge unlawful executive actions:

> Under limited circumstances, the standing of legislators to challenge
> allegedly unlawful executive actions has been recognized in the federal
> courts. See, e.g., *Coleman v. Miller,* 307 U.S. 433, 59 (1939); *Kennedy v.
> Sampson,* 167 U.S.App.D.C. 192, 511 F.2d 430 (1974); *Dennis v. Luis,* 741
> F.2d 628 (C.A.3, 1984).

*Dodak,* 495 N.W.2d at 555. And, the Michigan Supreme Court has interpreted Michigan's

Constitution to authorize individual legislators to bring legislative usurpation claims under

certain circumstances as it relates to committee members' specific legal rights to participate

in the legislative process:

> Although this Court is not bound to follow federal cases regarding
> standing, we agree that *Pierce* lends support at least for the standing claim
> of plaintiff Jacobetti as a member of the House Appropriations
> Committee. As in *Pierce,* plaintiff Jacobetti has been denied a specific
> statutory right sufficient to confer standing. If, for purposes of
> considering this claim, we assume arguendo that § 3 of the State
> Administrative Board act was impliedly repealed, then intradepartmental
> transfers could be made only by the state budget director in accordance
> with § 393 of the Management and Budget Act. That act confers upon
> plaintiff Jacobetti a right to approve or disapprove such transfers. Under
> these circumstances, the board's actions, if recognized, would deprive
> plaintiff Jacobetti "of that specific statutory right to participate in the
> legislative process." *Pierce,* 225 U.S.App.D.C. at 63, 697 F.2d at 305.

19

Dodak, 495 N.W.2d at 545 (footnotes omitted).  Other states have also authorized individual
legislators to bring legislative usurpation claims.[4]

In Michigan, the citizen-initiated petition and ballot constitutional amendment
procedures, both in 2018 and 2022, completely usurped the Legislators' Elections Clause
rights or privileges to cast a vote or opportunity to vote regulating the times, places and
manner of federal elections. It was a complete disenfranchisement, a complete nullification,
and complete withdrawal of a voting opportunity, as found within the Senate and House of
Representative rules. *Goldwater*, 617 F.2d at 702. The amendments left no legislative means
for the Legislators to vote in the way they claim is their right.

Even if a bill was put before the Legislators regarding federal elections that purported
to repeal the 2018 or 2022 amendments, or both, any vote would be futile or a useless act.
While legislators have some authority to act on a citizen initiative *law* under Article II,
section 9, they have no legal authority to repeal a constitutional amendment.  *See, Mothering J.*,
No. 362271, 2023 WL 444874, at *6 (An "initiated law is not 'subject to the veto power of
the governor,' and cannot 'be amended or repealed, except by a vote of the electors unless
otherwise provided in the initiative measure or by ¾ of the members elected to and serving
in each house of the legislature.'"). Under these circumstances, the Legislators have standing.

---

[4] See, e.g., *Romer v. Colorado Gen. Assembly*, 810 P.2d 215, 218-219 (Colo. 1991) (concluding
that the governor had standing to sue the legislature and noting the court's past holdings that
the legislature "had standing to bring [a declaratory-judgment] action against the governor to
challenge a particular construction given certain statutes by the governor" and "to challenge
the constitutional validity of gubernatorial vetoes"); see also *Wisconsin Legislature v. Palm*, 942
N.W.2d 900 (Wis. 2020) (holding that the legislature had standing to challenge regulations
issued by the Secretary-designee of the Department of Health Services).

To further emphasize this point, even in the Governor's lead case cited as the "controlling precedent," *Va. House of Delegates v. Bethune-Hill,* the U.S. Supreme Court leaves room for individual legislator standing under the Elections Clause:

> Nor does *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), aid the House. There, the Court recognized the standing of 20 state legislators who voted against a resolution ratifying the proposed Child Labor Amendment to the Federal Constitution. *Id.,* at 446, 59 S.Ct. 972. The resolution passed, the opposing legislators stated, only because the Lieutenant Governor cast a tie-breaking vote—a procedure the legislators argued was impermissible under Article V of the Federal Constitution. See *Arizona State Legislature*, 576 U.S., at —— – ——, 135 S.Ct., at 2664–2666 (citing *Coleman*, 307 U.S. at 446, 59 S.Ct. 972). As the Court has since observed, *Coleman* stands "at most" "for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Raines*, 521 U.S. at 823, 117 S.Ct. 2312. Nothing of that sort happened here. Unlike *Coleman*, this case does not concern the results of a legislative chamber's poll or the validity of any counted or uncounted vote.

*Virginia House of Delegates,* 139 S.Ct. at 1954 (2019).

Notably, since *Virginia House of Delegates,* the Supreme Court has recognized state legislative powers under the Elections Clause in a more specific way consistent with the Legislators' line of reasoning in this case:

> The legislature acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by the Federal Constitution.

*Moore v. Harper*, 600 U.S. 1, 27 (2023).

The Governor also cite two pre-*Moore* Sixth Circuit decisions.  Both cases are inapposite because they are not Elections Clause cases.  Def's Br. at 9-10. First, in *Crawford v. United States Department of Treasury*, 868 F.3d 438 (6th Cir.  2017), as state senator and several

individuals alleged to be subject to Foreign Account Tax Compliance Act (FATCA) and Bank Secrecy Act's foreign bank account reporting (FBAR) requirement brought action against the U.S.  Department of the Treasury, Internal Revenue Service (IRS), and Financial Crimes Enforcement Network, seeking to enjoin enforcement of FATCA, intergovernmental agreements (IGA) that facilitate foreign financial institutions' (FFI) disclosures of financial account information to the United States Government, and the FBAR.  Second, in *State by and through Tennessee General Assembly v. United States Department of State,* 931 F.3d 499 (6th Cir. 2019), the plaintiff Tennessee General Assembly, on its own behalf and on behalf of state, and two of its members brought action, alleged that United States violated Spending Clause and Tenth Amendment through enacting and implementing statutes requiring it to provide Medicaid coverage to eligible refugees.  So, neither of these two cases have anything to do with the Elections Clause and any federal rights the individual state legislators have thereunder.

The remaining factors of the private-right inquiry are also satisfied. Enforcing the federal rights of individual state legislators, as commanded under the Elections Clause, would impose no "'strain [on] judicial competence,' as the right is concrete and well-defined." *Colon-Marrero*, 813 F.3d at 20, quoting *Blessing v. Freestone,* 520 U.S. 329, 341 (1997). The specificity of the Elections Clause "directives shields against potentially disparate outcomes, bolstering the conclusion that the language is rights-creating." *Id.* (citation omitted). Furthermore, the Elections Clause language, requiring state legislators to prescribe the times, places and manner of federal elections, is couched in mandatory terms, "rather than precatory, terms,' and 'unambiguously impose a binding obligation.'" *Id.*

Because there exists an individual state legislator's right or privilege under the Elections Clause, an action lies under 42 U.S.C. § 1983 as a mechanism to seek a judicial remedy. Indeed, there is no private judicial remedy under the Elections Clause. *Colon-Marrero*, 813 F.3d at 21–22. Therefore, 42 U.S.C. § 1983 grants individual state legislators access to federal courts to enforce their federal rights under the Elections Clause.[5]

---

[5]Although this Court must follow Supreme Court decisions, until overruled or modified, as binding authority and must be followed. *U.S. v. Miller,* 316 F.2d 81, 83 (6th Cir. 1963) citing *United States v. Finazzo*, 288 F.2d 175, 177 (6th Cir. 1961), it is only in recent history that the meaning of "legislature" in constitutional context seems to have been settled, but it is far from it. In a 5-4 decision in *Arizona State Legislature*, 576 U.S. at 825, Chief Justice Roberts makes a persuasive argument as to what the meaning of "legislature" means under the U.S. Constitution:

> The relevant question in this case is how to define "the Legislature" under the Elections Clause. The majority opinion does not seriously turn to that question until page 2671, and even then it fails to provide a coherent answer. The Court seems to conclude, based largely on its understanding of the "history and purpose" of the Elections Clause, ante, at 2671, that "the Legislature" encompasses any entity in a State that exercises legislative power. That circular definition lacks any basis in the text of the Constitution or any other relevant legal source.

> The majority's textual analysis consists, in its entirety, of one paragraph citing founding era dictionaries. The majority points to various dictionaries that follow Samuel Johnson's definition of "legislature" as the "power that makes laws." Ibid. (internal quotation marks omitted). The notion that this definition corresponds to the entire population of a State is strained to begin with, and largely discredited by the majority's own admission that "[d]irect lawmaking by the people was virtually unknown when the Constitution of 1787 was drafted.

In short, if Justice Roberts is correct, then as for the Elections Clause, the Michigan State constitutional amendments themselves, runs contrary to the Supremacy Clause.

Alternatively, the Legislators have claimed standing as citizens, taxpayers and voters too. Compl. ¶¶ 77-83.  The U.S. Supreme Court has opined that a state may under its laws authorize anyone to represent the state in Elections Clause legislative usurpation cases. *Virginia House of Delegates,* 139 S.Ct. at 1951–52.  The State of Michigan has done this in at least two ways. First, the Michigan Constitution, Article II, §4(1)(a), in pertinent part, authorizes any citizen to bring an election law claim for declaratory, injunctive and other relief in Michigan court:

> Any Michigan citizen or citizens shall have standing to bring an action for declaratory, injunctive and/or monetary relief to enforce the rights created by this part (a) of subsection (4)(1) on behalf of themselves.

Second, the Michigan Supreme Court allows any private person to enforce by mandamus a public right or duty relating to elections:

> It is true that the bar for standing is lower when a case concerns election law. The Court of Appeals noted in *Deleeuw v. State Bd. of Canvassers* that "[e]lection cases are special ... because without the process of elections, citizens lack their ordinary recourse. For this reason we have found that ordinary citizens have standing to enforce the law in election cases." *Deleeuw* cited *Helmkamp v. Livonia City Council*, which similarly stated, "'*[I]n the absence of a statute to the contrary, ... a private person ... may enforce by mandamus a public right or duty relating to elections without showing a special interest distinct from the interest of the public.*'" However, these cases should not be interpreted as allowing any citizen to bring an action for declaratory judgment regarding the constitutionality of any election law that might affect his or her interests in the future.

*League of Women Voters of Michigan v. Secretary of State*, 957 N.W.2d 731, 744 (Mich. 2020) (footnotes omitted) (emphasis added).

The Governor's brief argues that the Legislators do not have standing as voting and taxpaying citizens.  Defs. Br. 11–15. However, notably, the Governor cites *Virginia House of Delegates,* conceding that federal courts have recognized that state law can designate a person,

such as state legislators, to bring legislative usurpation claims under the Elections Clause. Defs. Br. 10.

And, then, as to the Michigan Constitution, Article II, § 4(1)(a), the Article authorizes the Legislators to bring this lawsuit:

> For purposes of this part (a) of subsection (4)(1), "person" means an individual, association, corporation, joint stock company, labor organization, legal representative, mutual company, partnership, unincorporated organization, the state or a political subdivision of the state or an agency of the state, or *any other legal entity*, and includes an agent of a person.

Emphasis added.

The U.S. Supreme Court has recognized that under certain circumstances a legislative body falls within the term "any other legal entity:"

> That the senate is an appropriate legal entity for purpose of intervention and, as a consequence, of an appeal in a case of this kind is settled by our affirmance of *Silver v. Jordan,* 241 F.Supp. 576 (S.D.Cal.1964), *aff'd*, 381 U.S. 415 (1965), where it was said:
>
>> 'The California State Senate's motion to intervene as a substantially interested party was granted because it would be directly affected by the decree of this court.' 241 F.Supp., at 579.

*Sixty-Seventh Minnesota State Sen. v. Beens*, 406 U.S. 187, 194 (1972).

The Governor argues that the state legislators' rights and injuries are undifferentiated and common to all members of the public.  But, state legislators are connected to their election certificates which make them part of the legislature which means they have federal rights under the Elections Clause.  These state legislators' rights are distinguishable. The public does not have those rights because they are not state legislators.

25

The Governor further argues that a state law cannot confer federal court standing. However, the Governor's position contradicts the *Virginia House of Delegates* decision, which the Governor cites favorably, stating that a state may authorize any person to bring legislative usurpation claims under the Elections Clause.

The Governor also argues that the private cause of action to enforce rights under Michigan Constitution, Article II, §4(1)(a), only runs in the direction of enforcing rights, not undoing them.  Defs. Br. 13. But, the Legislators under the Elections Clause are enforcing voting rights, not undoing them.  The complaint makes clear that the Legislators are claiming their voting rights are being violated.

Then, the Governor argues that the Article II, §4(1)(a) text cannot be severed from the rest of the 2022 constitutional amendment. Defs. Br. 13–14. But, severance of the unconstitutional part of a law is determined at the end of the case if the Legislators prevail. *See Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335, 2348 (2020). So, at this time, this provision in Article II, §4(1)(a) creates a private cause of action for the Legislators to sue the government for election law violations. And, under this legal theory, this provision authorizing this lawsuit does not fall within the scope of the Elections Clause. A constitutional provision creating a private cause of action to sue election officials for violating law is not a regulation which regulates the "times, places and manner" of federal election.

The Governor also claims that federal and Michigan state law do not recognize taxpayer standing. Defs. Br. 14–15.  Yet, the Legislators claim that the *Virginia House of Delegates* decision and the Michigan Constitution, Article II, §4(1)(a), authorizes this lawsuit.

And, the Michigan Supreme Court in *League of Women Voters of Michigan v. Secretary of State* decision also authorizes this lawsuit because the Court acknowledged that "a private person…may enforce by mandamus a public right or duty relating to elections without showing a special interest distinct from the interest of the public." 957 N.W.2d 731, 744 (Mich. 2020).

The Legislators' claims of legal violations are redressable. The Legislators' claims are not speculative. The Governor argues that even if the Legislators claims are valid, the claims are not redressable or certainly speculative. Defs. Br. 16–18.

First, redressability is "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens For a Better Environment,* 523 U.S. 83, 102–03 (2008). There should be no question about redressability. The Legislators seek prospective equitable relief that the 2018 constitutional amendment, the 2022 constitutional amendment and any future constitutional amendments adopted without state legislative approval which regulate the times, places and manner of federal elections violate the Elections Clause through the Supremacy Clause. This Court has the legal authority to issue an order declaring the 2018 and 2022 state constitutional amendments as violative of the Elections Clause and to enjoin any process adopting a state constitutional amendment that likewise would regulate the times, places, and manner of federal elections without state legislative approval. 28 U.S.C. § 2201, et seq. (declaratory judgment act); Fed.R.Civ.P. Rule 65 (injunctions).

The Governor also argues that the claim against future proposed constitutional amendments is speculative. But, the plaintiff Legislator claims are targeted against the process of adopting these constitutional amendments without state legislative approval, per

27

Michigan Constitution, article XII, § 2, specifically as it relates to regulating federal elections. The Governor is defending the constitutionality of that process while acknowledging it's a current barrier to the Legislators' law-making regulating federal elections. Defs. Br. 16. That is hardly speculative.

## IV.    The Governor's Rule 12(b)(6) motion should be denied.

The Governor's argument under Rule 12(b)(6) is closely aligned if not intertwined with the Governor's jurisdictional argument under Article III standing issues. Def's Br. at 18-23. The critical error is the Governor's mischaracterization of the context of the Legislators Complaint. *See id.,* 9. If the Complaint's allegations are accepted as true, as they must, then the controlling case law supports that individual Legislators have "state[d] a claim to relief that is plausible on its face." *Mosier*, 90 F.4th 541, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Complaint asserts a 42 U.S.C. § 1983 claim based on the Legislators' federal rights or privileges under the Elections Clause to participate in state law-making regulating the times, places, and manner of federal elections. *E.g.,* Plts. Compl.  ¶¶ 1, 4, 6, 8, 17, 21, 67, 71. Section § 1983 provides a private cause of action when federal rights or privileges are violated by a person under color of state law. The Complaint's allegations state that the individual Legislators have federal rights or privileges under the Elections Clause protectable in a 42 U.S.C. § 1983 claim. Plts. Compl. ¶ 21.

As the Complaint alleges, the Legislators are members of the state legislature and, as such, they have federal rights or privileges to exercise an opportunity to vote on bills regarding the times, places, and manner of federal elections. Plts. Compl.  ¶ 14. In turn,

their federal rights or privileges are protected if a "person" under color of state law violates those federal rights or privileges.  42 U.S.C. § 1983.  The Complaint alleges injury because Michigan's citizen-initiated constitutional amendment process amounted to a disenfranchisement—a complete nullification or withdrawal of a voting opportunity granted to the Legislators through Senate and House of Representative Rules (and the State constitution).  The Michigan Supreme Court recognizes injury to individual state legislators when their individual rights or privileges to vote are nullified or usurped. *Dodak,* 495 N.W.2d at 545.

The Complaint's allegations state a claim to relief that is plausible on its face. The Governor's reliance and analysis of the case law—particularly *Smiley*, *Arizona,* and *Moore*—is misplaced because the cases do not apply to the underlying allegations of the Complaint. The *Moore* case actually supports the plaintiffs' claims.

In *Moore v. Harper,* 143 S.Ct. 2065*,* the U.S. Supreme Court held that the federal Elections Clause does not vest exclusive and independent authority in state legislatures to set the rules regarding federal elections and, therefore, did not bar the North Carolina Supreme Court from reviewing that state's legislature's congressional districting plans for compliance with North Carolina law.  Consistently, in so doing, the U.S. Supreme Court recognized that the state legislature's "particular authority" under the Electors Clause is subject to state constitutional limitations (e.g., Governor's veto) and federal and state judicial authority. The Legislators agree with *Moore* that their federal rights under the Electors Clause are limited by state constitutional limitations, federal and state judicial authority and Congressional enactments.

Yet, under *Moore,* the state legislature still has a federally-guaranteed legislative role in state law-making regulating the times, places and manner of federal elections.  In this way, the Legislators' claim violations of their federal rights under the Elections Clause, as interpreted by *Moore,* when constitutional amendments regulating federal elections are adopted using petition-and-state-ballot-proposals without state legislative approval.  Mich. Const., Art. XII, Sec. 2.

In *Smiley v. Holm,* 285 U.S. 355 (1932), another case cited and relied upon by the Governor, the U.S. Supreme Court confirmed the function of a state legislature in prescribing the times, places, and manner of holding elections for representatives in Congress under Constitution, Art. I, § 4, is a lawmaking function in which the veto power of the state governor participates, if the governor has that authority under the state constitution.  This case supports the Legislators' position that state legislatures constitutionally need to be involved in state law-making to regulate federal elections.

In the other 1932 case, *Koenig v. Flynn*, 285 U.S. 375(1932), the U.S. Supreme Court held that a concurrent resolution of a New York's bicameral legislative body redistricting state not submitted to and approved by Governor was ineffective.  This case is consistent with *Moore* decision's statements that there are state constitutional limits on the state legislature's law-making authority under the Elections Clause.  In *Koenig,* the state constitutional limitation on the state legislative authority upheld was the presentation of the legislatively-passed bill to the Governor for approval (signature) or veto.  This case also supports the Legislators' position that the state legislators in performing their duties under the Electors Clause are subject to state constitutional limitations.

The Governor's principal brief did not address this issue as to whether the Elections Clause creates federal rights or privileges in favor of individual state legislators enforceable through a cause of action under § 1983. *See generally, City of Racho Palos Verdes v. Abrams,* 544 U.S. 113, 119–121(2005). To be sure, 42 U.S.C. § 1983, does not itself confer rights, but "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.,* rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Uvir. v. Doe*, 536 U.S. 273, 285 (2002). Indeed, the elements to assert a § 1983 claim need not be repeated. That has been previously outlined above in the standing argument. However, the applicability of those standards support the following argument.

First, the Legislators, to establish their federal rights under the Elections Clause, must establish that the Elections Clause's class of beneficiaries includes the Legislators. *Rancho Palos Verdes,* 544 U.S. at 120; *see also, Gonzaga Univ.* 536 U.S. at 281. The targeted portion of the Elections Clause fits comfortably among federal legal provisions found to create individually enforceable rights because of their "'unmistakable focus on the benefited class.'" *Colon-Marrero,* 813 F.3d at 17, quoting *Gonzaga Univ.* 536 U.S. at 287. The Elections Clause text specifies the "Legislature" as a discrete class of beneficiaries and provides a specific power of regulating federal elections to them:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof…

The commands of the Elections Clause directs the state legislators to "prescribe" the times, places and manner of federal elections.

Consistently, the Michigan Constitution assigns the state's legislative powers to a senate and a house of representatives, under Article IV, § 1, consisting of elected members which would include the Legislators:

> Except to the extent limited or abrogated by article IV, section 6 or article V, section 2, the legislative power of the State of Michigan is vested in a senate and a house of representatives.

And, as elected members of either the Senate or House of Representatives, in order to pass bills under Article IV, section 22, each chamber provides the rules and methodology to ensure each member has that opportunity to vote "yea" or "nay" on any question put before them, that is, on any particular bill. *See e.g.,* Standing Rules of the House of Representatives in Accordance with the Michigan Constitution Article IV, section 13: Chapter II, Rules 12, 13; Chapter III, Rules 30, 31; Senate Rules: Chapter I-Section 3, 1.302; Chapter III, Section 1, 3.107; Section 5, 3.505.  And, the Michigan Supreme Court recognizes standing for state legislators when their individual rights or privileges to vote are nullified or usurped—as is the case here. *Dodak,* 495 N.W.2d at 545.

The remaining factors of the private-right inquiry are also satisfied. Enforcing the federal rights of individual state legislators, as commanded under the Elections Clause, would impose no "'strain [on] judicial competence,' as the right is concrete and well-defined." *Colon-Marrero*, 813 F.3d at 20, quoting *Blessing,* 520 U.S. at 341. The specificity of the Elections Clause "directives shields against potentially disparate outcomes, bolstering the conclusion that the language is rights-creating." *Id.* (citation omitted). Furthermore, the Elections Clause language, requiring state legislators to prescribe the times, places and

manner of federal elections, is couched in mandatory terms, "rather than precatory, terms,' and 'unambiguously impose a binding obligation.'" *Id.*

Because there exists an individual state legislator's right under the Elections Clause, an action lies under 42 U.S.C. § 1983 as a mechanism to seek a judicial remedy. Indeed, there is no private judicial remedy under the Elections Clause. *Colon-Marrero*, 813 F.3d at 21–22. So, 42 U.S.C. § 1983 grants individual state legislators access to federal courts to enforce their federal rights under the Elections Clause.

Against this legal backdrop, the Governor argues that the U.S. Supreme Court opinion in *Arizona v. Inter Tribal Council of Ariz., Inc.,* 570 U.S. 1, 8 (2013) resolves this case:

> The crux of Plaintiffs' claim is an assertion that the Elections Clause's use of the term "Legislature" prohibits the Michigan constitution from giving independent authority to regulate federal election to both the legislature (via statute) and the people (via proposal). But, in 2016, the U.S. Supreme Court squarely held that the Elections Clause poses no bar.

Defs Br. at 19.

To the contrary, the crux of this case is that the Legislators' federal rights under the Elections Clause are being violated by the adoption of constitutional amendments regulating times, places and manner of federal election without state legislative approval.  The Governor has inaccurately presented the process of Michigan Constitution, article XII, § 2. The text of the constitutional provision does not expressly revoke the Legislators' federally-guaranteed rights to regulate times, places, and manner of federal elections.  The Legislators' federal rights under the Elections Clause exist unless expressly revoked.  Federal rights of the Legislators to regulate federal elections can be revoked by state constitutions, but only by express terms of revocation. And, this Court cannot supply a revocation of the Legislators'

federal right where there is none. *See Hackley Union Nat. Bank v. Farmer*, 234 N.W. 135, 138 (Mich. 1931) (trust case) ("In Arundell v. Phillpot (1688) 2 Verm. 69, … The court in holding that there was no revocation, said: 'This court may supply an informal or defective revocation, but cannot make a revocation where there is none.'")

The Michigan Constitution, Article XII, section 2, has no language in it revoking the Legislators' federal rights to participate in law-making regulating federal elections. *See also,* Plts. Compl. Exs. A, B. Absent such express revocation language in Michigan Constitution, Article XII, section 2, then the Elections Clause still provides federal rights or privileges to the Legislators to participate in law-making decisions regulating federal elections.  So, those federal rights or privileges were violated by the use of the Michigan Constitution, Article XII, section 2, to regulate the times, places, and manner of federal elections in 2018 and 2022. Those constitutional amendments were invalidly adopted.  The Article XII, section 1, process, requiring state legislature approval, should have been used instead in 2018 and 2022.

The Governor, as a result of a misinterpretation of the Complaint, has misapplied *Arizona.*  Under the Governor's reading of *Arizona,* a state can constitutionally delegate the Elections Clause powers to an initiative-and-referendum process instead of a state legislature. But, the gravamen of the Legislators' Complaint is that the State of Michigan has not delegated the Elections Clause powers of state legislators to an initiative-and-referendum process. Michigan Constitution, Article XII, section 2, is silent on the topic.  So, the Election Clause federal rights or privileges of the state legislators have not been expressly revoked. In turn, the Michigan Constitution, Article XII, section 2, as is, can never be constitutionally used to adopt constitutional amendments to regulate federal elections. Whenever it is used to

34

adopt constitutional amendments to regulate federal elections, the individual state legislators'
constitutionally-guaranteed Elections Clause federal rights or privileges are violated under
color of state law.

The Michigan Constitution already has a provision bifurcating the state legislative
power to regulate the times, places and manner of federal elections between the state
legislature and an independent citizens redistricting commission:

> § 1 Legislative power. Sec. 1. Except to the extent limited or abrogated
> by article IV, section 6 or article V, section 2, the legislative power of the
> State of Michigan is vested in a senate and a house of representatives.

Article VI, section 6 refers to the independent citizens redistricting commission for state
legislative and congressional districts.  Article V, section 2, in relevant part, states that the
independent redistricting commission exercise legislative power without the state legislature
and Governor:

> Notwithstanding any other provision of this constitution or any prior
> judicial decision, as of the effective date of the constitutional amendment
> adding this provision…for purposes of interpreting this constitutional
> amendment the people declare that the powers granted to independent
> citizens redistricting commission for state and congressional districts
> (hereinafter, "commission") *are legislative functions not subject to the control or
> approval of the governor, and are exclusively reserved to the commission*….

Emphasis added. So, for the redistricting commission, the Constitution explicitly delegates
the "legislative" power to it—and effectively revokes that power of the state legislature.  *Id.*

By contrast, the Michigan Constitution, Article XII, section 2, does not have the
constitutional text expressly depriving the individual members of their state legislative
power. So, the state legislators retain their federal rights because they are not expressly
deprived of them in Michigan Constitution, Article XII, section 2.  So, whenever the process

of Michigan Constitution, Article XII, section 2 is used to adopt a constitutional amendment to regulate federal elections, it is a § 1983 violation of the individual state legislators' federal rights. Whereas, any claim based on the redistricting commission violating the Elections Clause is denied because the Michigan Constitution provides the exclusive legislative power to the redistricting commission, essentially expressly revoking that power of the state legislature.

In the alternative, if the Governor is correct that the *Arizona* precedent means the Legislators lose this case, then *Arizona* was wrongly decided and it must be overruled. *Arizona State Legislature* was a 5-4 decision that must be corrected by the U.S. Supreme Court. Justice Roberts' dissent highlighted the severe problems with the majority's holding.  *Arizona State Legislature*, 576 U.S. at 825, 827-829.  Despite the common understanding and plain meaning of the "Legislature" that had been used for centuries, the Arizona State Legislature decision upended it. Justice Roberts concluded:

> Yet that is precisely what the majority does to the Elections Clause today—amending the text not through the process provided by Article V, but by judicial decision. The majority's revision renders the Seventeenth Amendment an 86–year waste of time, and singles out the Elections Clause as the only one of the Constitution's seventeen provisions referring to "the Legislature" that departs from the ordinary meaning of the term.

*Id.* at 832.  Although precedent must be given serious consideration, it is not absolute. Prior Court decisions must be overturned if they were wrongly decided. *See Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228, 2261 (2022).  The Supreme Court has "long recognized, however, that stare decisis is 'not an inexorable command,'" *Pearson v. Callahan*, 555 U.S. 223, 233 (2009) and stare decisis "is at its weakest when we interpret the Constitution," *Agostini v.*

36

*Felton*, 521 U.S. 203, 235 (1997). Therefore, the *Arizona* decision, if it means what the Governor says it means, must be overruled.

## Conclusion

The Defendants' motion to dismiss should be denied.

Dated: February 5, 2024                    **MOHRMAN, KAARDAL & ERICKSON, P.A.**

/s/ *Erick G. Kaardal*
Erick G. Kaardal (MN No.229647)
*Attorney for Plaintiffs*
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
(612) 341-1074
kaardal@mklaw.com

Dated: February 5, 2024                    **KALLMAN LEGAL GROUP, PLLC**

/s/ *David A. Kallman*
By: David A. Kallman(P34200)
Stephen P. Kallman
*Attorneys for Plaintiffs*
5600 W. Mount Hope Hwy, Suite 2
Lansing, MI 48917
517-322-3207
dave@greatlakesjc.org
steve@greatlakesjc.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

/s/ *Erick G. Kaardal*