UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN LINDSEY, et al.,

    Plaintiffs,

v.

GRETCHEN WHITMER, et al.,

    Defendants.
_____/

Case No. 1:23-cv-1025

HON. JANE M. BECKERING

**OPINION AND ORDER**

Jonathan Lindsey, a state senator, along with one other state senator and nine state representatives, initiated this case against Gretchen Whitmer in her official capacity as Michigan's governor, Jocelyn Benson in her official capacity as Michigan's secretary of state, and Jonathan Brater in his official capacity as Michigan's director of elections. Plaintiffs seek declaratory and injunctive relief related to their claim that Michigan's adoption of constitutional amendments through a citizen-led initiative process violates their rights as legislators, taxpayers, and voters under the Elections Clause of the United States Constitution. Defendants moved to dismiss Plaintiffs' Complaint (ECF No. 15). For the following reasons, the Court grants Defendants' motion, closes this case, and therefore dismisses as moot the other motions pending in this case.[1]

---

[1] Jim Pedersen, Andrea Hunter, Michigan Alliance for Retired Americans, Detroit/Downriver Chapter of the A. Philip Randolph Institute, and Detroit Disability Power filed a Motion to Intervene as defendants in this case (ECF No. 5), and they subsequently filed a Motion to Strike (ECF No. 10) and a Motion to Expedite (ECF No. 20).

## I. BACKGROUND

### A. Factual Background

One of the ways in which Michigan's Constitution can be amended is by petition of the registered electors of Michigan (Compl. ¶ 24, citing MICH. CONST. Art. XII, Sec. 2). Michigan's Constitution provides in pertinent part the following:

> Amendments may be proposed to this constitution by petition of the registered electors of this state. Every petition shall include the full text of the proposed amendment, and be signed by registered electors of the state equal in number to at least 10 percent of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected. Such petitions shall be filed with the person authorized by law to receive the same at least 120 days before the election at which the proposed amendment is to be voted upon. Any such petition shall be in the form, and shall be signed and circulated in such manner, as prescribed by law. The person authorized by law to receive such petition shall upon its receipt determine, as provided by law, the validity and sufficiency of the signatures on the petition, and make an official announcement thereof at least 60 days prior to the election at which the proposed amendment is to be voted upon.

MICH. CONST. Art. XII, Sec. 2; *see* Compl. ¶¶ 26–28. After the correct number of valid signatures and their sufficiency are ascertained, the proposed amendment to the constitution is placed on the ballot as a ballot proposal to be considered by Michigan voters (Compl. ¶ 29). Any proposal that is approved by a majority of voters voting on the ballot proposal becomes part of the constitution and goes into effect 45 days after the date on which it was approved (*id.* ¶ 31). Michigan's Constitution does not require state legislative approval for the amendment (*id.* ¶¶ 24–25).

***2018 Constitutional Amendment.*** Michigan Ballot Proposal 3 ("Proposal 3") was a citizen-initiated ballot initiative approved by voters in Michigan as part of the 2018 federal elections (*id.* ¶ 33). The proposal reformed Michigan elections by protecting the right to a secret ballot; ensuring access to ballots for military and overseas voters; adding straight-ticket voting; automatically registering voters; allowing any citizen to vote at any time, provided they have a proof of residency; allowing access to absentee ballots for any reason; and auditing election results

(*id.* ¶ 34).  The measure amended Section 4 of Article II of the Michigan Constitution (*id.* ¶ 35, referencing Pls. Ex. A [ECF No. 1-1]).  The proposal was approved with 67 percent of the vote (*id.* ¶ 36).  State legislative approval was not obtained for the amendment because such approval is not required (*id.* ¶ 37).

*2022 Constitutional Amendment.*  In 2022, Michigan Ballot Proposal 2, the Right to Voting Policies Amendment a/k/a Promote the Vote ("Proposal 2"), was a citizen-initiated proposed constitutional amendment in the state of Michigan, which was voted on as part of the 2022 Michigan elections (*id.* ¶ 38).  The amendment changed voting procedures in Michigan with the stated goal of making it easier to vote (*id.* ¶ 39).  Various voting rights advocacy groups gathered 669,972 signatures, enough for the amendment to be placed on the 2022 ballot (*id.* ¶ 40).  On August 31, 2022, the four-member Board of State Canvassers, which is responsible for determining whether candidates and initiatives should be placed on the ballot, deadlocked 2–2, with challengers arguing that the ballot title of the initiative was misleading (*id.* ¶ 41).  On September 9, 2022, the Michigan Supreme Court ruled that the initiative should be placed on the November ballot (*id.* ¶ 42).  The ballot measure amended Article 2, Sections 4 and 7, of the Michigan Constitution (*id.* ¶ 43, referencing Pls. Ex. B [ECF No. 1-2]).  Proposal 2 was approved with 60 percent of the vote (*id.* ¶ 44).  Again, state legislative approval was not obtained for the amendment because such approval is not required (*id.* ¶ 45).

Governor Whitmer, Secretary Benson, and Director Brater have supervisory control over local election officials for all elections and for the performance of their election duties for state-level ballot proposals, such as the 2018 and 2022 ballot proposals (*id.* ¶ 61, citing MICH. COMP. LAWS § 168.21).  Defendants are also responsible for enforcement of laws governing all elections, including federal elections (*id.* ¶ 62).  After a constitutional provision regulating federal elections

3

goes into effect, Defendants implement the constitutional provisions regulating federal elections (*id.* ¶ 32).

## B.  Procedural Posture

On September 28, 2023, Plaintiffs filed this action, alleging that Governor Whitmer, Secretary Benson, and Director Brater support and enforce laws that violate the Elections Clause of the United States Constitution (Compl. ¶¶ 35, 43, & 46–47, 58, 62).  Specifically, Plaintiffs seek a declaratory judgment that "the use of the petition-and-state-ballot-proposal process under Michigan Constitution, Art. XII, Sec. 2, for regulation of times, places, and manner of federal elections is unconstitutional and violates the Elections Clause because the state legislature's approval and the state legislators' participation are not required, and that the process violated Plaintiffs' federal rights under the Elections Clause" (ECF No. 1 at PageID.15).  Plaintiffs also seek a declaration that "the 2018 and 2022 constitutional amendments, in their entirety, are constitutionally invalid, unenforceable, and have no legal effect on the state legislature enacting laws, subject to the Governor's veto power, to regulate times, places, and manner of federal elections" (*id.* at PageID.15).  According to Plaintiffs, the amendments were "not constitutionally enacted" and are "legally null-and-void" (*id.* ¶¶ 64 & 74).

Additionally, because Plaintiffs allege that those same petition-and-state-ballot-proposal processes could be used in the future to amend the Michigan Constitution to regulate the times, places, and manner of federal elections (*id.* ¶ 48), Plaintiffs also seek injunctive relief enjoining Defendants from "funding, supporting, or facilitating" the use of either the petition-and-state-ballot-proposal process or the 2018 and 2022 constitutional amendments themselves "to regulate times, places, and manner of federal elections" (*id.* at PageID.15).

In lieu of answering the Complaint, Defendants filed the motion to dismiss at bar (ECF No. 15).  Plaintiffs filed a response in opposition (ECF No. 19), and Defendants filed a reply (ECF No. 22).  Having considered their submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented.  *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

Defendants' motion to dismiss is filed pursuant to Federal Rule of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted).  Whether a party has standing is an issue of the court's subject-matter jurisdiction under Rule 12(b)(1).  *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017); *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013); *Roberts v. Hamer*, 655 F.3d 578, 580–81 (6th Cir. 2011).  A facial attack on standing challenges whether a complaint adequately pleads standing, even accepting its facts as true.  *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543 (6th Cir. 2021); *Primus Grp., LLC v. Smith & Wesson Corp.*, 844 F. App'x 824, 826 (6th Cir. 2021).  "In reviewing a facial attack to a complaint under Rule 12(b)(1) for lack of standing, '[courts] must accept the allegations set forth in the complaint as true' while drawing all inferences in favor of the plaintiff[.]"  *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023) (citation omitted).

Rule 12(b)(6) authorizes a court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]"  FED. R. CIV. P. 12(b)(6).  Specifically, a complaint must present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).  The court views the complaint in the light most favorable to the plaintiff, accepting as true all well-pled factual allegations and drawing all reasonable inferences in favor of the plaintiff.  *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).  However, "the

5

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. Discussion

Defendants argue that Plaintiffs' lack of standing prevents this Court from exercising jurisdiction over the subject matter of Plaintiffs' claims. Defendants also argue that Plaintiffs' claims otherwise fail on their merits based on established precedent from the United States Supreme Court. Subject-matter jurisdiction is the threshold question. This Court is obligated to confirm jurisdiction under Rule 12(b)(1) before proceeding with any adjudication on the Complaint's allegations under Rule 12(b)(6). *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."); *Chapman v. Tristar Prod., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) ("We are required in every case to determine—sua sponte if the parties do not raise the issue—whether we are authorized by Article III to adjudicate the dispute."). Without subject-matter jurisdiction, this Court lacks power to consider the merits of Plaintiffs' claims, *see Bell v. Hood*, 327 U.S. 678, 682 (1946) (explaining that motion to dismiss for failure to state a claim may be decided only after establishing subject-matter jurisdiction because determination of the validity of the claim is, in itself, an exercise of jurisdiction); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) ("[W]e are bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject-matter jurisdiction."), or, indeed, issue any order, *see U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1087 (6th Cir. 1992) (explaining that where a district court lacks subject-matter jurisdiction, its orders are "void"). In short, "[t]o succeed on the merits, a party must first

reach the merits, and to do so it must establish standing." *Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021). Consequently, the Court turns first to analyzing Defendants' Rule 12(b)(1) standing argument, and the Court finds the argument dispositive.

Defendants argue that Plaintiffs lack standing to bring their claims against them where all three of their theories of injury fly in the face of controlling precedent (ECF No. 16 at PageID.190–196). Defendants argue that even if Plaintiffs could identify a concrete and particularized injury, their claims also suffer from two other fatal Article III flaws: (1) their request for invalidation of the 2018 and 2022 Amendments is not redressable because the legislature has independently codified nearly all of those policies into Michigan's election statutes; and (2) their "freewheeling challenge" to a future, unidentified use of the proposal process to regulate federal elections is far too speculative to satisfy Article III's imminence requirement (*id.* at PageID.197–199).

In response, Plaintiffs argue that they have "supreme" law-making power, to wit: a "particularized right or privilege under the Electors [sic] Clause to have an opportunity to cast a binding vote on state laws regulating federal elections" (ECF No. 19 at PageID.231–235). They assert that an individual legislator's loss of this right or privilege is not an "institutional injury" (*id.*). Additionally, Plaintiffs argue that their claims are redressable because "[t]his Court has the legal authority to issue an order declaring the 2018 and 2022 state constitutional amendments as violative of the Elections Clause" (*id.* at PageID.248). Last, Plaintiffs argue that their claims are also not speculative but are "targeted against the process of adopting these constitutional amendments without state legislative approval … specifically as it relates to regulating federal elections" (*id.* at PageID.248–249).[2]

---

[2] Plaintiffs also argue that "[b]ecause there exists an individual state legislator's right or privilege under the Elections Clause, an action lies under 42 U.S.C. § 1983 as a mechanism to seek a judicial remedy" (ECF No. 19 at PageID.236–244). The argument is misplaced. As Defendants point out

Defendants' argument has merit.

Article III, § 2 of the United States Constitution provides that the judicial power of the federal courts extends only to "Cases" and "Controversies." "'[S]tanding,' by itself, traditionally has referred to whether a plaintiff can satisfy Article III's case-or-controversy requirement[.]" *Roberts*, 655 F.3d at 580 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979)). Standing "ensure[s] that federal courts do not exceed their authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016). The doctrine of standing requires federal courts to satisfy themselves that "the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)). *See also United States v. Texas*, 599 U.S. 670, 675 (2023) ("Article III standing is 'not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit which a party desires to have adjudicated; it is a part of the basic charter promulgated by the Framers of the Constitution at Philadelphia in 1787.'") (citation omitted). As the Sixth Circuit recently opined, Article III gives courts the power to adjudicate "Cases" and "Controversies," not "hypothetical disputes." *Savel v. MetroHealth Sys.*, No. 23-3672, ___ F.4th ___, 2024 WL 1190973, at *3 (6th Cir. Mar. 20, 2024).

The United States Supreme Court has held that "the irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. The plaintiff must have suffered "(1) a concrete and particularized injury-in-fact which (2) is traceable to the defendant's conduct and

---

in their reply, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing" (ECF No. 22 at PageID.285 n.1, quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)).

8

(3) can be redressed by a favorable judicial decision." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 343 (6th Cir. 2023). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the elements. *Spokeo*, 578 U.S. at 338; *Lujan*, 504 U.S. at 561. "A plaintiff must prove Article III standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1022 (6th Cir. 2024) (quoting *Lujan*, 504 U.S. at 561). Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element. *Spokeo, supra.*

The standing analysis in this case turns on the injury-in-fact requirement, a requirement that establishes a plaintiff's "personal stake in the outcome of the controversy." *Kareem*, 95 F.4th at 1022 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). In their Complaint, Plaintiffs allege three ways they have been injured—as (1) "legislators," (2) "taxpayers," and (3) "voters" (Compl. ¶ 63). The Court considers each theory in turn.

***Legislators.*** First, Plaintiffs allege they have "individual legislator standing to challenge usurpation of state legislative powers" (*id.* ¶ 65). Plaintiffs alleges that "as state legislators," they have "federal rights under the Elections Clause U.S. Const., Art. 1, Sec. 4, Cl. 1, to oversee and participate in making legislative decisions regulating the times, places and manner of federal elections" (*id.* ¶ 67). Plaintiffs allege that "Defendants caused injury to Plaintiffs when they supported and enforced laws and when they support and enforce constitutional provisions enacted through the petitioning and ballot question processes that usurp the state legislature's powers and violate the state legislator's federal rights under the Elections Clause" (*id.* ¶ 72).

As Defendants point out, the Supreme Court and the Sixth Circuit have directly rejected this type of "legislator standing" (ECF No. 16 at PageID.190). The Supreme Court has expressly held that "individual members lack standing to assert the interests of a legislature." *Virginia House*

*of Delegates v. Bethune-Hill*, 587 U.S. \_\_\_, \_\_\_; 139 S. Ct. 1945, 1952 (2019). Similarly, the Sixth Circuit has held that "[a]n individual legislator, or group of legislators, do not have Article III standing based on an allegation of an institutional injury, or a complaint about a dilution of legislative power[.]" *State by & through Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 514 (6th Cir. 2019). The Sixth Circuit reasoned that because the "nature of that injury" is "abstract and widely dispersed" among the legislative body, individual legislators cannot "claim a 'personal stake' in [such a] suit," and the abstract nature of their alleged injury renders it "'[in]sufficiently concrete' to establish Article III standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 830 (1997)). *See also Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 453 (6th Cir. 2017) ("The general rule that individual legislators lack standing to sue in their official capacity as [members of a legislature] follows from the requirement that an injury must be concrete and particularized."). Plaintiffs' asserted injury—the deprivation of the power to cast a binding vote—is neither concrete nor particularized because it is shared by every single member of the Michigan Legislature.[3]

***Taxpayers.*** Second, Plaintiffs allege that they have standing as "taxpayers" to bring this lawsuit because Defendants "use state funds to support and enforce current regulations governing federal elections as a result of past amendments to the Michigan Constitution which are legally unauthorized under the Elections Clause, including the use of state funds for similar petitioning or ballot questions in the future that affect federal elections without legislator involvement" (Compl.

---

[3] An individual legislator (or group of legislators) may sue as an authorized representative of a legislative body if they have been expressly chosen by the body to do so. *See Tennessee*, 931 F.3d at 514; *see also Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 801–02 (2015) (distinguishing a suit brought by individual legislators with one brought by the legislature itself or an authorized member). However, Plaintiffs do not allege in their Complaint (nor argue in briefing) that the Michigan Legislature has authorized them to serve as its representative in this litigation.

¶ 77). According to Plaintiffs, Defendants cause injury to Plaintiffs when they "fund" statewide referenda on such legally invalid ballot questions (*id.* ¶ 78). Plaintiffs allege that as state legislators, they are "uniquely injured by such illegal disbursement or illegal use of taxpayers funds because, if the referendum passes, there is a violation of the state legislators' federal rights under the Elections Clause" (*id.* ¶ 79).

In general, "state taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006). The Supreme Court has reasoned that if every "taxpayer could sue to challenge any Government expenditure, the federal courts would cease to function as courts of law and would be cast in the role of general complaint bureaus." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 593 (2007) (plurality op.). "[A] taxpayer may not 'employ a federal court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power in the Federal System.'" *United States v. Richardson*, 418 U.S. 166, 174 (1974). Like their asserted injury as legislators, Plaintiffs' asserted injury as taxpayers is neither concrete nor particularized.[4]

***Voters.*** Third, Plaintiffs allege that they have standing as "voters" to bring this lawsuit because "when such a referendum violating the Elections Clause is offered, Plaintiffs' personal vote in favor or against the referendum is wasted" (Compl. ¶ 81). According to Plaintiffs, "Defendants cause injury by unnecessarily burdening Plaintiffs' voting rights when they supervise, fund, or otherwise support statewide referenda on such legally invalid ballot questions" (*id.* ¶ 82).

---

[4] The Supreme Court has recognized that a taxpayer will have standing consistent with Article III to invoke federal judicial power when he alleges that congressional action under the taxing and spending clause violates the First Amendment's prohibition against laws respecting the establishment of a religion. *See Flast v. Cohen*, 392 U.S. 83, 105–06 (1968). However, Plaintiffs do not allege an Establishment Clause violation.

11

Again, controlling precedent wholly rejects Plaintiffs' voter-standing theory. The Supreme Court has "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, 468 U.S. 737, 754 (1984), abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–27 (2014). "[A]ssertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." *Id.*

In *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam), the injury the plaintiffs alleged was also that the law—the Elections Clause—had not been followed. The Supreme Court held that "this injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *Id.* As Defendants correctly point out, Plaintiffs' claim that the election regulations under which they must vote were enacted unlawfully is likewise a prototypical generalized grievance: "every other voter in Michigan could make the exact same claim" (ECF No. 16 at PageID.192–193).

In sum, Plaintiffs have not met their burden at the pleading stage to demonstrate injury-in-fact and have concomitantly failed to demonstrate Article III standing. *See Savel*, 2024 WL 1190973, at *3 ("If the plaintiff fails to satisfy *any* of the three standing requirements, we have no jurisdiction because there is no case or controversy to decide, and we must dismiss the case.") (emphasis added). Without standing for bringing their claims, Plaintiffs ask this Court for nothing more than a "jurisdiction-less 'advisory opinion.'" *Mann Constr., Inc. v. United States*, 86 F.4th 1159, 1162 (6th Cir. 2023) (quoting *California v. Texas*, 141 S. Ct. 2104, 2116 (2021)). Thus, dismissal under Rule 12(b)(1) is required. *See also Davis v. Colerain Twp., Ohio*, 51 F.4th 164,

176 (6th Cir. 2022) (indicating that dismissal for lack of subject-matter jurisdiction is without prejudice); FED. R. CIV. P. 58 (providing for entry of judgment).

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 15) is GRANTED.

**IT IS FURTHER ORDERED** that the motions to intervene (ECF No. 5), to strike (ECF No. 10), and to expedite (ECF No. 20) are DISMISSED as moot.

Dated:  April 10, 2024                                                        /s/ Jane M. Beckering
                                                                              JANE M. BECKERING
                                                                              United States District Judge